USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _9/28/2023_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARTIN NICHOLAS JOHN TROTT and
CHRISTOPHER JAMES SMITH, on behalf of and
solely in their capacity as the Foreign Representatives
and Joint Official Liquidators of MADISON ASSET
LLC (IN LIQUIDATION),

                        Plaintiffs,

             -against-

DEUTSCHE BANK AG,

                    Defendant.

---

1:20-cv-10299 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
DISMISS COUNTERCLAIM
AND DENYING MOTION TO
STRIKE AFFIRMATIVE
DEFENSE**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiffs Martin Nicholas John Trott and Christopher James Smith ("Plaintiffs" or the "Joint Liquidators"), solely in their capacity as the Foreign Representatives and Joint Official Liquidators of Madison Asset LLC ("Madison"), a Cayman investment fund that is now in official liquidation proceedings before the Grand Court of the Cayman Islands, brought claims against Deutsche Bank AG ("Deutsche Bank" or "Defendant") for fraudulent trading under Section 147 of the Cayman Islands Companies Act (2021 Revision) (the "Companies Act"). Second Amended Complaint [ECF No. 37].

    After this Court denied the motion by Deutsche Bank to dismiss Plaintiffs' Second Amended Complaint [ECF No. 59], Deutsche Bank filed an Answer [ECF No. 63], which included affirmative defenses and a single counterclaim for indemnification pursuant to the Parties' Multi-Market Custody Agreement ("the Custody Agreement"). Now before the Court is Plaintiffs' motion to dismiss the counterclaim and to strike the Thirteenth Affirmative Defense relating to any rights of set-off, contribution, or indemnification. [ECF No. 93]. For the following reasons,

Plaintiffs' motion to dismiss the Counterclaim is GRANTED, and Plaintiffs' motion to strike the Thirteenth Affirmative Defense is DENIED without prejudice.

## FACTUAL BACKGROUND

The Court assumes familiarity with the facts of this case and its prior decision. *Trott v. Deutsche Bank AG*, No. 1:20-CV-10299 (MKV), 2022 WL 951109 (S.D.N.Y. Mar. 30, 2022) [ECF No. 59], and reviews only those facts relevant to the pending motion.[1]

### *Madison and Deutsche Bank Custody Agreement*

In March 2014, Madison and Deutsche Bank entered into a Multi-Market Custody Agreement ("the Custody Agreement"), pursuant to which Madison would receive custodial services. *See* Custody Agreement; Answer ¶ 66. It is undisputed that Madison held a custody account with Deutsche Bank and that Deutsche Bank acted as Issuing Agent, Principal Agent, and/or Transfer Agent for certain note issuances defined in Plaintiffs' Second Amended Complaint. Answer ¶ 1. The custody relationship also included sub-accounts. Answer ¶ 71. In pertinent part, Section 13 of the Custody Agreement provides:

> The Client [Madison] agrees to indemnify the Bank and to hold the Bank harmless against all charges, costs, damages, losses, claims, liabilities, expenses, fees and disbursements (together with any value added tax or similar tax imposed from time to time), which the Bank may suffer or incur howsoever in connection with or arising from this Agreement, *provided that this Clause shall not be available to the Bank if the liabilities for which it is seeking indemnity hereunder arise from its own negligence or wilful [sic] misconduct.*

> The Client further agrees to indemnify the Bank and to hold the Bank harmless against any claims for income tax (including penalties) paid or payable by the Bank as agent of the Client (or of any person on whose behalf the Client is acting) under the tax laws of the jurisdiction in which the Branch/Subsidiary is located, notwithstanding that the Client has disputed such claims.

---

[1] The facts related to Plaintiffs' motion to dismiss are taken from Defendant's Answer, Defenses, and Counterclaim to Plaintiffs' Second Amended Complaint [ECF No. 63 ("Answer")] and the documents incorporated therein by reference, including the Multi-Market Custody Agreement between Madison and Deutsche Bank [ECF No. 36-1].

Custody Agreement, § 13 (emphasis added).  Moreover, the Parties agree that it is undisputed that the Agreement contains a contractual choice-of-law provision mandating that the governance of the Agreement be in accordance with New York law.  *See* Custody Agreement, § 29.[2]

**Madison Files for Bankruptcy and Commences the SDNY Litigation**

In July 2018, Madison was placed into liquidation in the Cayman Islands, and Plaintiffs were appointed as Joint Official Liquidators of the Company.  Thereafter, the Joint Liquidators filed a Chapter 15 Petition for Recognition of a Foreign Proceeding in the United States Bankruptcy Court for the Southern District of New York.  Chapter 15 Petition for Recognition of a Foreign Proceeding, Dkt. No. 1, *In re Madison Asset, LLC*, No. 18-12814 (MEW) (Bankr. S.D.N.Y. Sept. 18, 2018).  Recognition was granted by the Bankruptcy Court as a foreign main proceeding.  Order Granting Recognition, Dkt. No. 15, *In re Madison Asset, LLC*, No. 18-12814 (MEW) (Bankr. S.D.N.Y. Oct. 16, 2018).

About two years later, the Joint Liquidators brought an adversary proceeding against Deutsche Bank for fraudulent trading under Section 147 of the Cayman Islands Companies Act.  Complaint, Dkt. No. 25, *In re Madison Asset, LLC*, No. 18-12814 (MEW) (Bankr. S.D.N.Y. Oct. 14, 2020).  Thereafter, Deutsche Bank successfully moved in this Court (without opposition) to withdraw the bankruptcy reference.  [ECF Nos. 1, 12, 13].  Plaintiffs filed a First Amended Complaint, [ECF No. 17], and then, with leave of the Court, [ECF No. 32], filed the Second Amended Complaint.

Subsequently, Deutsche Bank moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim.  In support of its motion, Deutsche Bank filed a Memorandum of Law

---

[2] "[T]his Agreement shall be governed by and construed in accordance with the laws of the country, state or place of domicile in which such Branch/Subsidiary is located and performs its obligations hereunder, and the Client and such Branch/Subsidiary irrevocably submit to the non-exclusive jurisdiction of the courts of such country, state or place of domicile."

[ECF No. 45], including, relevantly, the Declaration of Rupert Geoffrey Dangar Bell, Deutsche Bank's expert in Cayman Islands law, with copies of statutes and cases, ("Bell Decl.") [ECF No. 47]. Plaintiffs opposed the motion, filing a Memorandum of Law [ECF No. 52], including, relevantly, the Declaration of Graeme Alexander Halkerston, Plaintiffs' expert in Cayman Islands law, with copies of statutes and cases, ("Halkerston Decl.") [ECF No. 53]. Deutsche Bank filed a Reply [ECF No. 54], and a supplemental Declaration of Rupert Geoffrey Dangar Bell, ("Bell Supp. Decl.") [ECF No. 55].

This Court denied the motion by Deutsche Bank to dismiss Plaintiffs' sole claim for fraudulent trading under Section 147 of the Cayman Islands Companies Act.[3] *Trott v. Deutsche Bank AG*, No. 1:20-CV-10299 (MKV), 2022 WL 951109, at *1 (S.D.N.Y. Mar. 30, 2022). In relevant part, the Court determined that Cayman Islands law applies to the Cayman Islands statutory claim asserted by the Liquidators. *Id*. at *5. Then, pursuant to Federal Rule of Civil Procedure 44.1,[4] and relying on the declarations of the Cayman law experts filed by both parties, the Court concluded that Plaintiffs' allegations, when accepted as true, adequately allege facts to support an inference that Deutsche Bank knowingly participated in the carrying on of Madison's fraudulent conduct. *Id*. at *11.

Thereafter, Deutsche Bank filed its Answer, which asserts a Counterclaim for indemnification pursuant to the Custody Agreement and twenty-three affirmative defenses. *See*

---

[3] Section 147 of the Companies Act provides: "(1) If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose the liquidator may apply to the Court for a declaration under this section. (2) The Court may declare that *any persons who were knowingly parties* to the carrying on of the business in the manner mentioned in subsection (1) are liable to make such contributions, if any, to the company's assets as the Court thinks proper." Bell Decl. Ex. A (emphasis added) [ECF No. 47].

[4] Rule 44.1 gives the Court discretion in interpreting foreign law. Specifically, the court "may consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

Answer (Counterclaim ¶ 1); Answer (Defenses).   Among those affirmative defenses, the Thirteenth Affirmative Defense asserts that Plaintiffs' claim should be limited by "any rights of set-off, contribution, and indemnification."  Answer (Defenses).  Since the Counterclaim seeks relief that could potentially impact the debtors' estate, the Court entered an Order directing Deutsche Bank to seek relief in the Chapter 15 proceedings from the automatic stay.  [ECF No. 70].  The Bankruptcy Court issued an order granting Deutsche Bank's motion, lifting the automatic stay "solely to permit Deutsche Bank AG to assert its indemnification claim as a defense, or counterclaim to the extent asserted as a defense."  *See* Order, *In re Madison Asset LLC*, No. 18-12814 (Bankr. S.D.N.Y.), ECF No. 43.

Plaintiffs now move to dismiss the sole Counterclaim for indemnification and to strike the Thirteenth Affirmative Defense pled by Deutsche Bank.  [ECF No. 93].  In support of its motion, Plaintiffs filed a Memorandum of Law [ECF No. 94] ("Pl. Br."), and a declaration of counsel [ECF No. 95].  Deutsche Bank opposed the motion with a Memorandum of Law [ECF No. 96] ("Opp.").  Plaintiffs then submitted a Reply Memorandum of Law. [ECF No. 98] ("Reply").

## LEGAL STANDARDS

### I.   Motion to Dismiss Counterclaim

In considering a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the court applies the same standards governing a motion to dismiss a complaint.  *Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019); *see also Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021); *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021).  A counterclaim defendant prevails on a motion to dismiss if the claim against it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 556 U.S. at 678 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim defendant] is liable for the misconduct alleged." *Id.*  In ruling on a motion pursuant to Rule 12(b)(6), "the duty of a court is merely to assess the legal feasibility of the [counterclaim]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010).  Dismissal is appropriate only where the non-moving party "can prove no set of facts consistent with the [counterclaim] that would entitle them to relief." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).  The Court may consider "the facts alleged in the [counterclaim], documents attached to the [counterclaim] as exhibits, and documents incorporated by reference." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  For documents to be incorporated by reference, the counterclaim must make "a clear, definite and substantial reference to the documents." *Jones-Cruz v. Rivera*, No. 19 CIV. 6910 (PGG), 2021 WL 965036, at *3 (S.D.N.Y. 2021) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).

## II.   Motion to Strike Affirmative Defense

A motion to strike an affirmative defense is governed by Federal Rule of Civil Procedure 12(f), which provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Whether to strike a party's affirmative defense is within the district court's discretion. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019).  Generally, "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense,"

with the recognition that applying the plausibility standard to any pleading is a "context-specific" task. *GEOMC*, 918 F.3d at 98 (citing *Iqbal*, 556 U.S. at 679). Moreover, an affirmative defense is improper and should be stricken "if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC*, 918 F.3d at 98.

## ANALYSIS

### I.    Indemnification Counterclaim

Deutsche Bank asserts a single counterclaim against Plaintiffs for indemnification pursuant to Section 13 of the Custody Agreement. *See* Answer (Counterclaim ¶ 1). Plaintiffs argue that the Counterclaim should be dismissed because the Court's prior holding that Plaintiffs' sole claim requires proof, at a minimum, of "willful blindness" renders the Counterclaim legally infeasible. *See* Pl. Br. at 18.[5]

In *Trott v. Deutsche Bank AG*, No. 1:20-CV-10299 (MKV), 2022 WL 951109 (S.D.N.Y. Mar. 30, 2022), this Court held—and the parties *agreed*—that in order for Plaintiffs to prove their Section 147 fraud claim, Plaintiffs must prove that "Deutsche Bank's participation in carrying on the fraud was '*knowing*.'" *Id*. at *6 (emphasis added) (citing Bell Decl. ¶ 11, Ex. A (The Companies Act); Halkerston Decl. ¶ 18, Ex. A (The Companies Act)). Moreover, relying on the declarations of *both* parties' Cayman Islands law experts, the Court held that "[i]t is undisputed that to establish that Deutsche Bank was 'knowing[ly]' a party to the carrying on of Madison's fraud, Plaintiff[s] must plead either *actual knowledge of the fraud* or '*wilful blindness*' on the part of Deutsche Bank." *Id*. at *8 (citing Bell Decl. ¶ 21; Halkerston Decl. ¶ 77).

---

[5] Both parties spend significant time arguing whether the Custody Agreement provides indemnity for inter-party claims rather than only third-party claims. To support their respective interpretations of the Agreement, the parties make various arguments with respect to its structure, purpose, and plain meaning to argue whether the indemnification provision unequivocally indicates its intent to apply to inter-party claims. However, such a text-based analysis is beyond the scope of a motion to dismiss and would require the Court to evaluate the merits of this case. At this stage, the Court must accept the allegations in the Counterclaim as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

The Court noted that "[t]he parties *agree* that wilful blindness is established when a party has suspicion of an underlying fraud and makes a conscious decision not to make inquiries which might result in actual knowledge of those facts." *Id*. (citing Bell Decl. ¶ 23(b), Ex. I (*Manifest Shipping Co Ltd. v. Uni-Polaris Co Ltd.*, [2003] 1 AC 469 ("blind-eye knowledge requires . . . a suspicion that the relevant facts do exist and a deliberate decision to avoid confirming that they exist."); Halkerston Decl. ¶¶ 73, 78). Indeed, both parties agreed that a Plaintiff "must show *more* than even '*gross*' negligence on the part of the defendant." *See* Bell Decl. ¶ 23(b), Ex. I; Halkerston Dec. ¶ 81 (emphasis added).

Accordingly, this Court determined that a prerequisite for any judgment in Plaintiffs' favor with respect to its Section 147 claim necessarily requires a finding that Deutsche Bank acted with *mensa rea* at least greater than "gross negligence."[6] Section 13 of the Custody Agreement expressly states that indemnification "shall not be available to the Bank if the liabilities for which it is seeking indemnity hereunder *arise from its own negligence or wilful [sic] misconduct*." *See* Custody Agreement, § 13 (emphasis added). Thus, if Plaintiffs prevail on their Section 147 claim, there can be no offset to any liability under the Custody Agreement, because a necessary finding would have been made that Deutsche Bank acted with either "actual knowledge of the fraud" or "wilful blindness." *Trott*, 2022 WL 951109, at *8 (citing Bell Decl. ¶ 21; Halkerston Decl. ¶ 77). Similarly, if Plaintiffs do *not* prevail, there is nothing to indemnify. As such, there is "no set of facts consistent with the [counterclaim] that would entitle [Deutsche Bank] to relief." *Meyer*, 761

---

[6] Deutsche Bank weakly argues that "[t]his Court has yet to determine the elements of a Section 147 claim" because "Section 147 has yet to be applied or interpreted by any Cayman Islands court," and thus, "the issue of whether or not success on a Section 147 claim aligns with a finding of either 'negligence or wilful misconduct' is an open question." Opp. at 13. As discussed at length, the Court, pursuant to its authority under Rule 44.1 to interpret foreign law, has already held—and the parties *agreed*—that Plaintiffs must establish that Deutsche Bank was 'knowing[ly]' a party to the carrying on of Plaintiffs fraud and that 'knowingly' requires "either *actual knowledge of the fraud* or '*wilful blindness*' on the part of Deutsche Bank." *Id*. at *8 (citing Bell Decl. ¶ 21; Halkerston Decl. ¶ 77).

F.3d at 249.   In other words, the counterclaim is not "legal[ly] feasibl[e]."   *DiFolco.*, 622 F.3d at 113.

Deutsche Bank points to various cases in which courts did *not* dismiss claims for indemnification even where an agreement's indemnification language excluded damages in the event of negligence or willful misconduct.   These cases are easily distinguishable.   In each case that Deutsche Bank cites, the defendants sought to bring indemnification counterclaims in response to plaintiffs' *breach of contract* claims, among others.   *Nat'l Credit Union Admin. Board v. Deutsche Bank Nat'l Trust Co.*, 410 F. Supp. 3d 662, 691 (S.D.N.Y. 2019); *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 332 (S.D.N.Y. 2010); *Architecture, P.C. v. Acheson Doyle Partners Architecture*, P.C., 2022 WL 170646, at *4 (S.D.N.Y. 2022); *Borough Const. Group, LLC v. Red Hook 160 LLC*, 2022 WL 4386753, at *3 (N.Y. Sup. Ct. 2022).   Breach of contract claims, unlike Section 147 claims, do *not* require plaintiffs to prove—as a necessary element—negligence or willful misconduct.   As such, in those cases, despite the plaintiffs' allegations that the defendants may have acted with either negligence, fraudulent intent, or willful misconduct in breaching the contracts, there was a legal feasibility that the plaintiffs would prevail on those claims even if such intent were not ultimately proven.   Here, no such legal feasibility exists, because Plaintiffs' sole claim requires an initial finding that Deutsche Bank acted with "wilful blindness."

Deutsche Bank also points to *Gramercy Advisors, LLC v. Coe*, 2014 WL 4197370 (S.D.N.Y. 2014).   In *Gramercy*, the plaintiffs initiated an action seeking specific performance of the defendants' alleged contractual obligations to advance plaintiffs' litigation costs incurred in defending a *separate* action, in which the defendants accused plaintiffs of fraud.   *Id*. at *4.   While the court noted that "[t]here is no real dispute that the allegations in the [separate] action, if proven, would be sufficient to nullify [d]efendants' indemnification obligations," the court recognized a

distinction between obligation to advance costs and the limitations on defendants' ultimate liability.  *Id*. at *5 ("The fact that [d]efendants pled fraud in [the separate action] does not limit *their duty to advance costs*; dismissal *on this ground* would therefore be premature.  The duty to defend is not coextensive with the duty to indemnify[.]") (emphasis added).  There are no such allegations here regarding any duty to advance costs to Deutsche Bank; the counterclaim is purely related to indemnification.

In short, because the indemnification counterclaim is legally infeasible, Plaintiffs' motion to dismiss the counterclaim is granted.

## II.    Thirteenth Affirmative Defense

In its Answer to Plaintiffs' Second Amended Complaint, Deutsche Bank asserts several affirmative defenses, including its Thirteenth Affirmative Defense, asserting that Plaintiffs' claims should be limited by "any rights of set-off, contribution, and indemnification."   Answer (Defenses).  Plaintiffs argue that the Thirteenth Affirmative Defense should be stricken because (1) there is no question of fact that might allow Deutsche Bank to succeed; (2) there is no substantial question of law that might allow Deutsche Bank to succeed; and (3) Plaintiffs would be prejudiced by the inclusion of the defense.  Pl. Br. at 19 (citing *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 629, 645 (S.D.N.Y. 2018)).

Plaintiffs argue that they establish their first two arguments based on "the same factual and legal analysis and precedent that dooms the Counterclaim."  Pl. Br. at 19.  The Court disagrees.  Indeed, "[t]here is no dispute" that an affirmative defense should be stricken "if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *GEOMC*, 918 F.3d at 98.  While this Court found that the indemnification counterclaim was legally infeasible, the Thirteenth Affirmative Defense is facially broader than the counterclaim.  *See* Answer (Defenses)

("Plaintiffs' claims are limited by operation of law, including, as applicable, any rights of *set-off*, *contribution*, and indemnification.") (emphasis added).  Plaintiffs have offered no basis for striking the alternative theories of set-off or contribution, which are distinct from indemnification.  *See e.g.*, *Glaser v. Fortunoff*, 71 N.Y.2d 643, 646 (1988); *Tech. Ins. Co., Inc. v. Philadelphia Indem. Ins. Co.*, 642 F. Supp. 3d 445, 469 n.5 (S.D.N.Y. 2022).

In response, Plaintiffs argue that Deutsche Bank has "alleged no facts that support a right to set-off . . . or contribution."  Reply at 8.  In support, Plaintiffs correctly cite to *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019), which held that "[t]he plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense."  *See* Reply at 8.  However, Plaintiffs shrewdly stop the quote there, failing to include the remaining portion of the Second Circuit's holding which recognizes that, "as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task."  *GEOMC*, 918 F.3d at 98.  The Circuit goes on to state that this is relevant to the lesser degree of rigor appropriate for testing the pleading of an affirmative defense as opposed to a complaint, because the "pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard."  *Id*.

Finally, Plaintiffs argue that "allowing the Thirteenth Affirmative Defense to stand . . . risks confusion and prejudice for Plaintiffs."  In support of their argument that the affirmative defense would cause confusion, Plaintiffs cite only an unreported Middle District of Florida case, which struck an affirmative defense regarding "unclean hands."  *See Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs*, LLC, 2019 WL 13138272, at *3 (M.D. Fla. 2019).  In that case, the court held that the affirmative defense was of limited relevance to anything but one specific claim, which would not be presented to a jury in any event.  This case is inapposite.  In

any event, the Court finds that to consider—at the pleadings stage—whether an affirmative defense risks confusing a jury, would be premature.

Ultimately, the Second Circuit has held that "[a] factually sufficient and legally valid defense should *always* be allowed if timely filed *even if* it will prejudice the plaintiff by expanding the scope of the litigation." *GEOMC*, 918 F.3d at 98. "A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Id.*; *see also See Lucente v. International Business Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002). There are no allegations here that the affirmative defenses were asserted in an untimely manner. As such, the Court denies Plaintiffs' motion to strike the Thirteenth Affirmative Defense.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss Defendant's counterclaim is GRANTED, and Plaintiffs' motion to strike Defendant's Thirteenth Affirmative Defense is DENIED without prejudice. The Clerk of Court is respectfully requested to close Docket Entry No. 93.

**SO ORDERED.**

**Date:   September 28, 2023**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**