UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN NICHOLAS JOHN TROTT and
CHRISTOPHER JAMES SMITH, on behalf of
and solely in their capacity as the Foreign
Representatives and Joint Official Liquidators
of MADISON ASSET LLC,

                        Plaintiffs,

v.

DEUTSCHE BANK, AG,

                        Defendant.

20 Civ. 10299 (DEH)

**MEMORANDUM OPINION
AND ORDER**

DALE E. HO, United States District Judge:

    Plaintiffs Martin Nicholas John Trott and Christopher James Smith—on behalf of and solely in their capacity as the Foreign Representatives and Joint Official Liquidators of Madison Asset LLC ("Madison")—bring a single claim for fraudulent trading under Section 147 of the Cayman Islands Companies Act ("Section 147") and demand a jury trial. Second Am. Compl. ("SAC") 1, ¶ 157, ECF No. 36. Before the Court is Defendant Deutsche Bank's motion to strike Plaintiffs' jury demand. Mot. to Strike, ECF No. 101. For the reasons set forth below, Defendant's motion is **DENIED**.

## BACKGROUND

    The Court assumes familiarity with the background facts of this case, which are discussed more fully in a previous opinion denying Defendant's motion to dismiss. *See Trott v. Deutsche*

*Bank AG*, No. 20 Civ. 10299, 2022 WL 951109, at *1-4 (S.D.N.Y. Mar. 30, 2022) (Vyskocil, J.).[1]

As relevant here, Plaintiffs allege that Deutsche Bank assisted a fraudulent trading scheme orchestrated by Madison's former principals and principals of related entities, purportedly causing Madison to lose more than $200 million. SAC ¶ 151. Plaintiffs, as Madison's liquidators, seek damages under Section 147, in the form of a "contribution" to the assets under their control. They specifically allege that "Deutsche should be required to make a contribution to Madison in an amount equal to the loss that it suffered through the carrying on of its business in a fraudulent manner." *Id.* ¶ 155. Section 147 provides as follows:

> (1) If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose the liquidator may apply to the Court for a declaration . . .
>
> (2) The Court may declare that any persons who were knowingly parties to the carrying on of the business in the manner mentioned in subsection (1) are liable to make such contributions, if any, to the company's assets as the Court thinks proper.

Cayman Is. Companies Act (2021 Revision) § 147.

On March 6, 2023, Deutsche Bank filed its motion to strike Plaintiffs' jury demand, arguing that Plaintiffs are not entitled to a jury because "their sole cause of action is equitable in nature." *See* Def.'s Mem. Supp. Mot. to Strike ("Def.'s Br.") 2, ECF No. 102.

## LEGAL STANDARDS

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. U.S. Const.

---

[1] This case was subsequently reassigned to the undersigned on October 23, 2023.

amend. VII.[2]  The phrase "Suits at common law" refers to "suits in which *legal* rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized, and equitable remedies are administered." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990).  "[T]he thrust of the Amendment was to preserve the right to jury trial as it existed in 1791," *Curtis v. Loether*, 415 U.S. 189, 193 (1974), when the Amendment was ratified by the original states.  *See Dimick v. Schiedt*, 293 U.S. 474, 476 (1935).

Both parties articulate the applicable Seventh Amendment legal standard as a two-step test from *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989):

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

*See* Def.'s Br. 5; Pls.' Mem. Opp'n Mot. to Strike ("Pls.' Opp'n") 1, ECF No. 103.  In considering this issue, courts in this district continue to articulate the applicable legal standard in the same manner, citing *Granfinanciera*.  *See, e.g.*, *Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, No. 20 Civ. 07561, 2023 WL 6237862, at *2 (S.D.N.Y. Sept. 26, 2023); *Hawkins ex rel. MedApproach, L.P. v. MedApproach Holdings, Inc.*, No. 13 Civ. 5434, 2021 WL 4199996, at *2 (S.D.N.Y. Sept. 15, 2021); *Abraham v. Leigh*, No. 17 Civ. 5429, 2021 WL 2941652, at *1 (S.D.N.Y. July 13, 2021); *King v. Fox*, No. 97 Civ. 4134, 2007 WL 4207202, at *1 (S.D.N.Y. Nov. 20, 2007).[3]

---

[2] In all quotations from cases, unless otherwise indicated, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses.

[3] Circuit courts, including the Second Circuit, have cited *Granfinanciera* and its lineage—*Terry* and *Tull v. United States*, 481 U.S. 412 (1987)—in applying the same two-step test.  *See, e.g.*, *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 183 (2d Cir. 2019) (citing another case, *Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir. 2001), that in turn cites *Terry*); *Hughes v. Priderock Cap. Partners, LLC.*, 812 F. App'x 828, 833-36 (11th Cir. 2020) (per curiam); *TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1371-74

3

But the test as articulated in *Granfinanciera* "has not been applied by the [Supreme] Court in its more recent cases on the civil jury trial right." Samuel L. Bray, *Equity, Law, and the Seventh Amendment*, 100 Tex. L. Rev. 467, 479 (2022). Instead, in the more than three decades since *Granfinanciera*, the Supreme Court has articulated a two-part test for the applicability of the Seventh Amendment in a slightly different manner:

> [W]e ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was. If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999) (considering first whether the common law or statutory cause of action at issue "either was tried at law at the time of the founding or is at least analogous to one that was," and second, "whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791"); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1200 (2021) (considering first whether a defense was legal or equitable, then whether a jury trial was necessary "to preserve the substance of the common-law jury trial right as it existed in 1791").

These two ways of articulating the test for the Seventh Amendment's applicability do not appear to differ meaningfully in substance and can be harmonized as follows: the Court will apply the two step *Markman* analysis, treating the first step as encompassing both parts of the *Granfinanciera* test. That is, at step one, the Court will determine whether Plaintiffs' Section

---

(Fed. Cir. 2019); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1354 (11th Cir. 2019); *Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 675 (1st Cir. 2017); *Teutscher v. Woodson*, 835 F.3d 936, 942-43 (9th Cir. 2016).

147 claim is "at least analogous" to a cause of action that was tried at law at the Founding, *Markman*, 517 U.S. at 376, by considering both the nature of the claim itself and the remedy sought, *see Granfinanciera*, 492 U.S. at 42; *cf. Tull*, 481 U.S. at 417 ("To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought."); Bray, *supra*, at 479 ("[T]hese cases have conspicuously merged the two [*Granfinanciera*] inquiries into one"). The Court will then follow the second step of the *Markman* analysis and "ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Markman*, 517 U.S. at 376.[4]

## DISCUSSION

### I. Section 147 of the Cayman Islands Companies Act

"Before inquiring into the applicability of the Seventh Amendment, [the Court] must first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998). Defendant proposes one avenue, arguing that as a matter of comity, the Court should

---

[4] It may be that most courts continue to apply the two-part test from *Granfinanciera* because the second step of the *Markman* inquiry—i.e., whether the "particular issue occurring within a jury trial . . . is itself necessarily a jury issue," 517 U.S. at 377—is superfluous in most disputes over the Seventh Amendment's applicability. That step was necessary in *Markman*, which considered the narrow question of whether, in a patent infringement action, the Seventh Amendment protects a right to have a jury decide "the construction of a patent claim." *Id.* But where, as here, the parties disagree whether a claim in its entirety—as opposed to a particular issue—must be heard by a jury, it is likely sufficient for a court to determine whether the claim itself is analogous to a common law claim at the time of the Founding. In any event, because the Supreme Court has continued to articulate the governing test in the same terms outlined in *Markman*, this Court will follow that analysis.

defer to "Cayman law, which strictly limits a civil party's right to a jury," and does not provide for such a right under Section 147. Def.'s Br. 4.

Defendant's contention is unavailing. As Defendant concedes, it is federal, not Cayman, law that "controls the question of whether Plaintiffs are entitled to a jury trial." Def.'s Br. 3 n.1, 4. While Cayman substantive law applies to Plaintiffs' cause of action as a matter of comity, *see Trott*, 2022 WL 951109, at *5, the Seventh Amendment governs the right to a jury trial in the United States, and supersedes foreign procedural law on that question. *See also Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1326 (2d Cir. 1993) ("In any action commenced in a federal court, 'the right to a jury trial . . . is to be determined as a matter of federal law.'" (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963)). The sole case on which Defendant relies, *In re Ephedra Prod. Liab. Litig.*, 349 B.R. 333, 335 (S.D.N.Y. 2006), does not require this Court's application of Cayman Islands procedural law as a matter of comity, and this Court knows of no other authority so requiring. Thus, the Court "must reach the constitutional question" at issue. *Feltner*, 523 U.S. at 347.

**II.     The Seventh Amendment**

The Court proceeds by analyzing Plaintiffs' claim under the two-part test set forth in *Markman*. For reasons discussed more fully below, the Court holds that Plaintiffs have a Seventh Amendment right to a jury trial for their Section 147 claim. In so holding, this Court concurs with the conclusion of the only other court (as far as this Court is aware) to have considered the applicability of the Seventh Amendment to Section 147. *See Pearson v. Deutsche Bank AG*, No. 21 Civ. 22437, 2023 WL 2872443 (S.D. Fla. Apr. 9, 2023) (denying Deutsche Bank's motion to strike jury demand for Section 147 claim).

6

### A. Whether Plaintiffs' Claim is Analogous to a Cause of Action Tried at Law

At the first step of the *Markman* analysis, the Court considers whether Section 147 is "at least analogous" to a cause of action that would have been tried at law in 1791. *Markman*, 517 U.S. at 376. The Court will consider both the nature of the claim and the remedy sought. *Granfinanciera*, 492 U.S. at 42.

A brief overview of the historical distinction between legal and equitable claims is warranted. "Prior to the [Seventh] Amendment's adoption [in 1791], a jury trial was customary in suits brought [at law] in the English law courts." *Tull*, 481 U.S. at 417. "At law[,] there were writs[ that could] be listed, and each was roughly analogous to what would now be called a 'claim' or 'cause of action.'" Bray, *supra*, at 484-85. But "[t]here were only a limited number of writs, and those that existed could not be readily adapted to create new causes of action." *In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473, 515 (E.D.N.Y. 1995), *aff'd* 100 F.3d 944 (2d Cir. 1996), *aff'd*, 100 F.3d 945 (2d Cir. 1996), and *aff'd in part, vacated in part*, 78 F.3d 764 (2d Cir. 1996). Thus, "[m]odern equity jurisdiction emerged as a result of the inability of the rigid early English common law to accommodate the transition from a feudal society to an increasingly complex social order." *Id. See also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility."). The remedies available at common law and at equity were different: at common law, "a plaintiff might be limited to a suit for damages." Bray, *supra*, at 485. "[B]ut that remedy might be inadequate" to make the plaintiff whole, *id.*, and so the chancellor overseeing a dispute at equity could mandate remedies like "specific performance" to "supplement[]" the written code. *Id.*[5]

---

[5] Much more could be said about the distinction between claims historically brought at common law and those brought at equity. For further discussion, see *In re Joint E. & S. Dists. Asbestos*

7

"Classifying which actions belong to law and which to equity for the purpose of defining the jury trial right continues to be one of the most perplexing questions of trial administration." Charles Alan Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. § 2302 (4th ed. 2023).  That is in part because, as an historical matter, "a great deal of overlap existed between the two English judicial systems in 1791," and "the dividing line between law and equity was vague in 1791." *Id. See also* Fleming James, Jr., *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655, 658-59 (1963) ("[T]he line between law and equity (and therefore between jury and non-jury trial) was not a fixed and static one . . . . This led to a very large overlap between law and equity.").

Moreover, "[a]lthough the thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time." *Curtis*, 415 U.S. at 193.  The Supreme Court has

> recognized that "suits at common law" include not merely suits, which the common law recognized among its old and settled proceedings, but [also] suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.  The Seventh Amendment thus applies not only to common-law causes of action but also to statutory causes of action analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.

*City of Monterey*, 526 U.S. at 708-09.  Thus, "[i]t is settled law . . . that the Seventh Amendment jury guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to sound basically in tort and seek legal relief." *Id.* at 709.  *See also Curtis*, 415 U.S. at 193 (explaining that the Seventh Amendment "may well be construed to embrace *all suits*

---

*Litig.*, 878 F. Supp. at 515-24; *SFF-TIR, LLC v. Stephenson*, 262 F. Supp. 3d 1165, 1203-23 (N.D. Okla. 2017).

*which are not* of equity and admiralty jurisdiction") (emphasis added, quoting *Parsons v. Bedford*, 28 U.S. 433, 446-47 (1830)).

The Supreme Court has therefore explained that, in determining whether a statutory action is "analogous" to a common law action, a court need not find "a precisely analogous common-law cause of action." *Tull*, 481 U.S. at 421. Rather, it is sufficient that the "essential function" of the two actions be the same. *Id.* With these basic principles in mind, the Court turns to the requisite two-step inquiry under *Markman*.

### 1. Nature of the Claim

The Court has endeavored to conduct the "abstruse historical inquiry" required of it, *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970), and is persuaded by Plaintiffs' argument that their Section 147 claim is analogous to at least one legal claim available to parties in 1791—that of trover,[6] which is now the modern tort known as conversion.[7] As the Court previously explained, to state a claim under Section 147,

> Plaintiffs must allege that: (1) some business of Madison "has been carried on with intent to defraud creditors of the company . . . or for any fraudulent purpose," (2) Deutsche Bank was a "part[y] to the carrying on of the business" for such fraudulent

---

[6] Plaintiffs point to two other 18th century claims for the Court's consideration. First, they contend that their Section 147 claim resembles the common-law legal writ for trespass on the case, which remedied harm to chattels. Pls.' Opp'n 10 (citing Gross Decl. Ex. C (Elizabeth Jean Dix, *The Origins of the Action of Trespass on the Case*, 46 Yale L.J. 1142, 1172 (1937))). Alternatively, Plaintiffs urge the Court to find that their claims share some characteristics with "centuries-old accessory liability claims that were pursued at law, not equity," because the statute "permits a liquidator to hold a liquidated entity's service provider . . . liable for wrongfully participating in the carrying on of a corporate fraud." Pls.' Opp'n 12. Because the Court finds that Plaintiffs' Section 147 claim is analogous to trover, and on that ground finds that Plaintiffs' jury right is preserved, it need not address Plaintiffs' alternative arguments.

[7] *See* Edward H. Warren, *Qualifying as Plaintiff in an Action for a Conversion*, 49 Harv. L. Rev. 1084, 1085 (1936) ("Trover has had its long day, and the usual situation now is that a plaintiff brings, not an action of trover, but an action of tort for a conversion."). In turn, it is settled law that conversion is "unmistakably [an action] at law triable to a jury," *Ross*, 396 U.S. at 533.

9

purpose, and (3) Deutsche Bank's participation in carrying on the fraud was "knowing."

*Trott*, 2022 WL 951109, at *6. Here, Plaintiffs allege that Madison's creditors had a right to certain funds that were misappropriated in a fraudulent scheme in which Deutsche Bank knowingly participated. *See* SAC ¶ 155. Madison's liquidators now seek compensatory damages "in an amount equal to the loss that [they] suffered" when Deutsche Bank "carr[ied] out or maintain[ed] Madison's fraudulent business by facilitating and processing tens of millions of wrongful cash transfers." *Id*. at ¶¶ 2, 155.

By way of comparison, "[i]n order properly to allege a claim of conversion, or trover, the following elements must be set forth: (1) ownership or the right to possess a specific identifiable thing; (2) interference with plaintiff's right to possession; and (3) intent." *Bomar Res., Inc. v. Sierra Rutile Ltd.*, No. 90 Civ. 3773, 1991 WL 4544, at *12 (S.D.N.Y. Jan. 15, 1991). "The distinguishing characteristic of an action of trover was that the successful plaintiff recovered from the defendant the *full value* of the property in question." Warren, *supra*, at 1086.

The elements of Plaintiffs' Section 147 claim are not an exact match for trover, but all that matters is that they are "at least analogous," *Markman*, 517 U.S at 376, in that the "essential function" of the two actions are the same, *Tull*, 481 U.S. at 421. The essential function of the claim here is to allow Madison's liquidators to recover damages against Deutsche Bank for its alleged participation in a fraudulent scheme to misappropriate certain funds held by Madison. Similarly, "actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England," including "common law actions of trover" against "bankrupts." *Granfinanciera*, 492 U.S. at 43. In one trover case, brought in 1777, a jury considered whether an alleged fraudulent act entitled plaintiffs to recover the value of disputed goods. *Rust v. Cooper*, 2 Cowp. 629, 98 Eng. Rep. 1277 (K.B. 1777)  In another trover case, brought in 1786, it

10

was "left to the jury to consider" whether transfers placed in the "defendant's hands to pay himself were fraudulent or not." *Thompson v. Freeman*, 1 T.R. 155, 99 Eng. Rep. 1026 (K.B. 1786). In these cases, the parties brought claims for alleged fraudulent acts related to the misappropriation of property to which they had a right. Plaintiffs' Section 147 claim is sufficiently analogous for purposes of the Court's analysis.

### 2. The Relief Sought

Next, and perhaps more importantly, the Court considers the nature of the relief sought, *Granfinanciera*, 492 U.S. at 42, and whether the "type of relief [sought] was available in equity courts as a general rule." *Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir. 2003).

Plaintiffs' requested relief is most properly understood as legal. Plaintiffs seek money damages for Deutsche Bank's role in the alleged fraud, which has long been recognized as a legal remedy. *See Feltner*, 523 U.S. at 352 ("We have recognized the general rule that monetary relief is legal, and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment."); *Curtis*, 415 U.S. at 197 (rejecting the characterization of an award of compensatory and punitive damages as equitable relief); *City of Monterey*, 526 U.S. at 710 ("Even when viewed as a simple suit for just compensation, [the plaintiff's] action sought essentially legal relief."); *Granfinanciera*, 492 U.S. at 48 (citing cases stating the same).[8]

---

[8] Although the comparison to trover is not essential to the Court's determination that Plaintiffs' requested relief is legal in nature, the Court notes that the analogy remains helpful here. Historical actions for trover allowed a plaintiff to "recover[] from the defendant the full value of the property in question." *See* Warren, *supra*, at 1085-86. Similarly, here, Plaintiffs' Section 147 claim seeks to recover the value of assets purportedly stripped of Madison by Defendant's allegedly fraudulent acts.

11

Defendant characterizes remedies under Section 147 as analogous to 18th century equitable contribution.  According to Defendant, Section 147 "seeks to apportion the loss associated with [a] company's liquidation among responsible parties," just as historically equitable "contribution" actions did.  *See* Def.'s Br. 6 (collecting 19th century "contribution" cases).  Defendant's argument relies heavily on the use of the word "contribution" in the statute, *see* Def.'s Br. 6, arguing that the text of Section 147 empowers the Court to hold a convicted party "liable to make [] contributions . . . to the [defrauded] company."

But at least one other court has rejected Defendant's argument.  *See Pearson*, 2023 WL 2872443, at *2 (finding "no support demonstrating that 'contributions' imply a claim for equitable contribution").  The parties agree that Section 147 was derived from Section 213 of the English Insolvency Act, *see Trott*, 2022 WL 951109, at *6; and the Court credits Plaintiffs' expert testimony explaining that the latter permitted recovery of *compensatory* damages.  Halkerston Decl. ¶¶ 16, 20, 29, 33, ECF No. 53.  The only other court to have considered whether there is a Seventh Amendment right to a jury trial for Section 147 claims also concluded that the predecessor statute, Section 213, provides for relief that is compensatory in nature, notwithstanding the use of the term "contribution."  *See Pearson*, 2023 WL 2872443, at *3 (reviewing cases concerning Section 213 and concluding they "describe the remedy available in Section 213, and therefore Section 147, as functionally one for 'compensatory damages'").  Compensatory damages "are such as will compensate the injured party for the injury sustained, and nothing more."  *Vt. Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998).  Such relief in the form of money damages is "the classic form of legal relief," *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002), in contrast to equitable contribution, which is meant to distribute the burden of recompense among those with a common obligation.  *See Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000) (noting the "well-

settled principle in the law of contribution" that jointly liable parties are obligated to pay their shares); *Corrales-Patino v. Procida Constr. Corp.*, No. 19 Civ. 5579, 2021 WL 5331528, at *17 (S.D.N.Y. Nov. 15, 2021) (noting that equitable contribution may be "sought so long as the parties are subject to liability for damages for the same injury.").

Plaintiffs do not seek an apportionment of property within Defendant's control, and they seek neither the return of fees paid to Defendant, nor disgorgement; instead, they seek compensatory money damages for Defendant's alleged role in facilitating the purported fraudulent dissipation of Madison's assets. *See, e.g.*, SAC ¶¶ 1, 151 ("In total, Madison suffered losses of at least $60 million from fraudulent trading activity and transfers that misappropriated funds and has received more than $200 million in liquidation claims resulting from the carrying on of its business in a fraudulent manner to which Deutsche was a knowing participant."); Pls.' Opp'n 3 (stating that Plaintiffs seek neither the return of fees paid to Defendant, nor disgorgement, but rather, compensatory damages); Gross Decl. Ex. A ¶¶ 33-59 (calculating Plaintiffs' compensatory damages). Defendant's "purely semantic" argument, hinging on the mere use of the word "contribution," fails to grapple with the substance of Plaintiffs' actual allegations and has "no relevance to the adjudication of [their] Seventh Amendment claim." *Granfinanciera*, 492 U.S. at 49 n.7.

In sum, because the Court finds that the present action for money damages is not equitable in nature, it concludes that Section 147 provides a legal remedy that is protected by a jury right. *See Terry*, 494 U.S. at 570.

### B. Whether the Issues Raised in this Case Were Decided by Judge or Jury

Having found that Plaintiffs' claim "belongs in the law category," *City of Monterey*, 526 U.S. at 708, the Court next "look[s] to history to determine whether the particular issues, or

13

analogous ones, were decided by judge or by jury in suits at common law at the time the Seventh Amendment was adopted." *Id.* at 718. Where, as here, "there is no exact [1791] antecedent [to the statute at issue], the best hope lies in comparing the modern practice to earlier ones whose allocation to court or jury we do know." *Markman*, 517 U.S. at 378. "Where history and precedent provide no clear answers, functional considerations also play their part in the choice between judge and jury." *Id.* at 388.

Again, while neither Section 147 nor a predecessor statute existed in 1791, "[w]e do know that in suits sounding in tort for money damages, questions of liability were decided by the jury, rather than the judge, in most cases." *City of Monterey*, 526 U.S. at 718. *See also Granfinanciera*, 492 U.S. at 43 (collecting 18th-century case law in which claims for trover were tried to a jury in courts of law). The relief Plaintiffs seek—damages designed to hold Defendant liable for its alleged fraudulent acts—has historically been determined by juries. *See Feltner*, 523 U.S. at 353 ("It has long been recognized that by the law[,] jur[ies] are judges of the damages. . . . And there is overwhelming evidence that the consistent practice at common law was for juries to award damages."); *id.* at 353-54 (collecting 18th century English cases). The basic questions of fact raised by Plaintiffs' claim are appropriately determined by a jury. *See* 9 Fed. Prac. & Proc. § 2302.1 ("[T]here is a strong federal policy favoring trial by jury of issues of fact. The strength of this policy in itself may provide the answer in cases in which the historical test gives no clear guidance."). Deutsche Bank "adduces no authority to buttress the claim that suits to recover an allegedly fraudulent transfer of money . . . were typically or indeed ever entertained by English courts of equity when the Seventh Amendment was adopted." *Granfinanciera*, 492 U.S. at 44.

Accordingly, the Court holds that the Seventh Amendment "provides a right to a jury trial on all issues pertinent to an award of statutory damages under" Section 147.  *Feltner*, 523 U.S. at 355.

## CONCLUSION

For the reasons discussed herein, the Court concludes that Section 147 provides a legal remedy that is protected by jury rights, *see Terry*, 494 U.S. at 570, and holds that Defendant has failed to meet its burden to demonstrate that "there is no federal right to a jury trial," Fed. R. Civ. P. 39(a)(2).  Its motion is therefore **DENIED**.

The Clerk of Court is respectfully directed to terminate ECF No. 101.

The parties shall meet and confer and file a joint status letter by **April 16, 2024**.  The letter shall (1) indicate whether the parties seek a referral to the Court-annexed mediation program or to the Magistrate Judge; (2) indicate whether either party seeks to file a motion for summary judgment, and if so, state the basis for such anticipated motion and propose a mutually agreeable briefing schedule; (3) in the event neither party intends to file a motion for summary judgment, propose mutually convenient dates in October and November to schedule a trial, and state the anticipated length of trial; and (4) state any other issue that the parties would like to address at the conference referenced below.

The parties are directed to appear for a status conference on **May 2, 2024, at 2:30 p.m. (E.T.)**.  The parties are directed to dial 646-453-4442, enter the meeting code 840281375, and press pound (#).

SO ORDERED.

Dated: March 25, 2024

New York, New York

_____

DALE E. HO

United States District Judge