UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN NICHOLAS JOHN TROTT, et al., <br>                            Plaintiffs, <br> v. <br> DEUTSCHE BANK, AG, <br>                            Defendant. | 20 Civ. 10299 (DEH) <br><br> **ORDER** |

DALE E. HO, United States District Judge:

      On May 8, 2023, Plaintiffs Martin Nicholas John Trott and Christopher James Smith—on behalf of and solely in their capacity as the Foreign Representatives and Joint Official Liquidators of Madison Asset LLC ("Madison")—filed a request for a pre-motion conference regarding: "(1) Deutsche Bank's [Suspicious Activity Report ("SAR")] privilege assertion for withheld 'Suspicious Activity Information Forms' [("SAIFs")] about Madison or affiliates and (2) [Defendant] Deutsche Bank's request to claw back 10 deposition exhibits, more than 50 pages of deposition testimony, and other documents as inadvertently produced."  May 8, 2023 Letter 1, ECF No. 116.  On May 9, 2023, the Court ordered simultaneous briefing on the parties' discovery dispute, ECF No. 117, which the parties filed the following week.  *See* Def.'s Mem. of L. in Supp. of Def.'s Assertion of SAR Privilege ("Def.'s Br."), ECF No. 118; Pls.' Br. in Supp. of Mot. to Compel and for Related Relief ("Pls.' Br."), ECF No. 124.[1]  The Court heard oral argument on the parties' discovery dispute on May 2, 2024.  *See* ECF No. 139.

      For the reasons discussed herein, Plaintiffs' motion to reopen discovery and to compel the production of SAIFs is **GRANTED**, while Defendant's request that the Court "order

---

[1] On October 13, 2023, this suit was reassigned to the undersigned.

Plaintiffs to return to Deutsche Bank or destroy [the disputed] documents, permit redactions to deposition testimony referencing those documents, and deny Plaintiffs' belated request for Deutsche Bank to produce additional documents protected by the SAR Privilege," Def.'s Br. 2, is **DENIED**.

I. **Limited Discovery**

Plaintiffs must show "good cause" for reopening discovery to grant their motion to compel. *See* Fed. R. Civ. P. 16(b)(4).  In analyzing requests to reopen discovery, courts consider six factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018).[2]

At least four of these factors weigh in Plaintiffs' favor.  First, no trial date has been scheduled.  Second, Defendant will not be prejudiced by a limited reopening of discovery to grant Plaintiffs' motion to compel.  As discussed on the record before the Court, Plaintiffs do not seek to take any new depositions, file any expert reports, or delay any pending motions or orders; rather, they seek only to compel production of a very limited, specific set of documents.  Moreover, Defendant suggested on the record that it has already ascertained and collected the full universe of relevant SAIFs.  It would not be onerous to now produce them.  Third, Plaintiffs have persuasively demonstrated that they were diligent both in attempting to obtain the disputed documents directly from Defendant, and in pursuing the matter with the Court once the issue was

---

[2] In all quotations from cases, unless otherwise indicated, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses.

ripe. *See* Pls.' Br. 3-4, 15-17 (describing Plaintiffs' extensive efforts to obtain discovery and seek relief). Fourth, the existence of SAIFs written about Madison is highly relevant to what Defendant knew about Madison's allegedly fraudulent conduct. Accordingly, the Court concludes that there is good cause to reopen limited discovery and grants Plaintiffs' request.

## II. SAR Privilege

The critical issue here is whether SAIFs, internal documents used at Deutsche Bank to "evaluat[e] whether to file a SAR," are covered by SAR privilege. *See* Def.'s Br. 1. The Court concludes that they are not.

The Bank Secrecy Act, 31 U.S.C. § 5311 *et seq*., provides in relevant part that "[t]he Secretary [of the Treasury] may require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1). The Financial Crimes Enforcement Network ("FinCEN"), the agency with which SARs are filed, has promulgated regulations to implement this statute, requiring national banks to file SARs "when they detect a known or suspected violation of Federal law or a suspicious transaction related to a money laundering activity or a violation of the Bank Secrecy Act." 12 C.F.R. § 21.11 (2022). To "creat[e] . . . an environment that encourages a national bank to report suspicious activity without fear of reprisal," 75 Fed. Reg. 75576, 75579 (Dec. 3, 2010) (codified at 12 C.F.R. § 21), the regulations hold that SARs "and any information that would reveal the existence of a SAR, are confidential, and shall not be disclosed," with limited exceptions. 12 C.F.R. § 21.11(k). As relevant here, SAR privilege does not protect from disclosure "[t]he underlying facts, transactions, and documents upon which a SAR is based." *Id*. at § 21.11(k)(1)(ii)(A)(2). Indeed, "[n]othing in the text of the [relevant] regulations suggests with any clarity that the documents that are part of [a bank's] investigatory process are covered by [SAR privilege]." *Wultz v. Bank*

3

*of China Ltd.*, 56 F. Supp. 3d 598, 600 (S.D.N.Y. 2014).  "[T]he relevant regulation bars only disclosure of information that 'would' reveal the existence of an SAR; it does not prohibit disclosure of information that 'could' or 'might' reveal the existence." *Id*. at 601.

The Court has reviewed the sealed deposition testimony at issue and examined a sealed sample of a SAIF.  *See* Thomas Decl. Ex. B, Sloan Dep. Tr. ("Sloan Dep. Tr."), ECF No. 125-2; *id*. at Ex. D, SAIF, ECF No. 125-4.  The SAIF states facts about potentially suspicious banking transactions.  According to witness testimony, the SAIF is an internal tool used as part of Deutsche Bank's evaluation process to determine whether an activity might be suspicious enough to flag to the SAR team:

> [T]he SAIF reaches a point where it is reviewed to determine is it suspicious, . . . or not suspicious. If it is deemed not suspicious at that point, it is closed completely, not escalated.  If it is determined to be suspicious, it goes to the SAR team who reviews all the documentation again and analysis and often performs analysis of their own.  And at that point, they make another question or they reach the question, do we file this as a SAR in which case they draft out a SAR report or do we conclude that this is not suspicious for whatever reasons and they draft out a no SAR report.

Sloan Dep. Tr. 180:9-180:21.  Importantly, the SAIF includes neither any specific discussion of SAR requirements, nor any analysis regarding whether a SAR should be filed.  Nor does the SAIF indicate whether a SAR was actually filed.  On these facts, which Deutsche Bank fails to challenge with any citation to the record, the Court "do[es] not see how the [SAIFs] differ in character from the 'underlying . . . documents upon which a SAR is based'—records that the regulations themselves explicitly exclude from the SAR prohibition.  In no instance [has the Court] been shown documents that would 'reveal the existence of a SAR.'" *Wultz*, 56 F. Supp. 3d at 602.  Accordingly, it rejects Defendant's invocation of SAR privilege over the SAIFs.

Defendant makes much of interpretive text that accompanied the promulgation of the final regulations, which provides as follows:

> [T]he strong public policy that underlies the SAR system as a whole . . . leans heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances **to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not**.

Def.'s Br. 4 (drawing from 75 Fed. Reg. 75593, 75595 (Dec. 3, 2010), with emphasis in Defendant's briefing). This Court agrees with the analyses of other courts in this district, which have deemed the cited text "too tentative and qualified to constitute an authoritative interpretation of the regulation as prohibiting disclosure of the type of documents at issue here." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701, 2015 WL 1726435, at *3 (S.D.N.Y. Apr. 15, 2015). "[S]ignificantly, [the interpretive language] states that withholding of [investigatory] material, if it is even to occur, need not occur in all circumstances but only in 'appropriate' circumstances, without stating what those circumstances are or even what characterizes them." *Wultz*, 56 F. Supp. 3d at 601. "Had the regulation or perhaps even the interpretation outright barred production of documents prepared by a bank as part of its process to investigate suspicious activity, the materials at issue here would be properly withheld. But neither the regulation nor the interpretive language contains any such bar." *Id.* The Court cannot conclude that SAR privilege applies to the SAIFs.

\*   \*   \*

For the reasons stated above, Plaintiffs' motion is **GRANTED** and Defendant's motion is **DENIED**. The Court concludes that SAR privilege does not extend to the SAIFs that Defendant attempts to claw back. Accordingly, Defendant is ordered to produce all the SAIFs in question

within **ten days** of this Order.

       SO ORDERED.

Dated: May 6, 2024
       New York, New York

                                               DALE E. HO
                                  United States District Judge