UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN NICHOLAS JOHN TROTT et al.,

                Plaintiffs,

v.

DEUTSCHE BANK, AG,

                Defendant.

20 Civ. 10299 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

    Plaintiffs Martin Nicholas John Trott and Christopher James Smith (the "Joint Liquidators"), solely in their capacity as the Foreign Representatives and Joint Official Liquidators of Madison Asset LLC ("Madison"), a Cayman investment fund that is now in official liquidation proceedings before the Grand Court of the Cayman Islands, bring claims against Defendant Deutsche Bank AG ("Deutsche Bank") for fraudulent trading under Section 147 of the Cayman Islands Companies Act (2021 Revision). *See* Second Am. Compl. ("SAC"), ECF No. 36. The Court assumes familiarity with the general facts of this case from a previous opinion denying Deutsche Bank's motion to dismiss. *See Trott v. Deutsche Bank AG*, No. 20 Civ. 10299, 2022 WL 951109, at *1-4 (S.D.N.Y. Mar. 30, 2022) (Vyskocil, J.).

    Before the Court are the parties' cross-motions for summary judgment, *see* ECF Nos. 142, 145, and various related motions, *see* ECF Nos. 156 (Deutsche Bank's motion to exclude certain proffered experts), 194 (the Joint Liquidators' motion for sur-reply). For the reasons discussed below, Deutsche Bank's Motion for Summary Judgment is **GRANTED**, and the Joint Liquidators' Partial Motion for Summary Judgment is **DENIED**. The remaining motions are **DENIED AS MOOT.**

## LEGAL STANDARDS

Summary judgment is appropriate when a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). A party opposing summary judgment must establish a genuine issue of fact by citing to particular parts of materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017). In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). On cross-motions for summary judgment, "the court evaluates each party's motion on its own merits and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated. The principal facts on which the Court's decision is based are undisputed unless otherwise noted.

**DISCUSSION**

"The question of standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Here, Deutsche Bank argues the Joint Liquidators have neither constitutional nor prudential standing. First, Deutsche Bank argues that, to the extent that the Joint Liquidators seek to remedy injuries to Madison's creditors (who were the ultimate victims of the fraudulent scheme perpetrated here), the Joint Liquidators lack constitutional standing to assert claims on behalf of another party. Second, to the extent the injury asserted here is to Madison itself, Deutsche Bank argues that the Joint Liquidators lack prudential standing under the Second Circuit's *Wagoner* rule, set forth in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("*Wagoner*"), which held that, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." The Court considers Deutsche Bank's arguments with respect to each type of standing below and ultimately concludes that the Joint Liquidators lack prudential standing under the *Wagoner* rule.

**I.    Constitutional Standing**

To establish standing under Article III, a plaintiff must prove: (1) they have suffered a "concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Deutsche Bank challenges the second and third elements (i.e., injury-in-fact and causation/traceability), which the Court addresses in turn below.

### A. Injury-In-Fact

The Joint Liquidators bring this claim under Cayman Island Companies Act Section 147 ("Section 147"), which permits liquidators to seek a contribution to a debtor's assets from any person or entity that knowingly participated in the carrying on of the debtor's business with the purpose of defrauding its creditors. *See* Cayman Is. Companies Act (2021 Revision) § 147. Here, the gravamen of the Joint Liquidators' claim is that Deutsche Bank "was willfully blind to Madison's fraudulent business," *Trott*, 2022 WL 951109, at *8, and processed wire transfers by Madison's principals that were part of this fraudulent scheme, resulting in monetary loss to Madison's assets totaling over $200 million. Pls.' Mem. Supp. Partial Summ. J. ("Pls.' Mem.") at 4, 6, ECF No. 143; *see* SAC ¶¶ 151, 155; *see, e.g.*, Pls.' Rule 56.1 Statement ¶¶ 7, 14, 17, ECF No. 144. The precise amount of loss is not undisputed. But at this stage, the Court need not quantify the loss with precision—the record before the Court clearly demonstrates, and Deutsche Bank does not contest, that there was one. And obviously, "[a]ny monetary loss suffered by the plaintiff satisfies [the injury-in-fact] element; even a small financial loss suffices." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Nat. Res. Def. Council, Inc. v. United States Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013)).

Deutsche Bank, however, argues that the Joint Liquidators lack constitutional standing, because the ultimate purpose of their Section 147 claim is to address an injury to Madison's creditors. Def.'s Mem. Supp. Summ. J. ("Def.'s Mem.") at 9-10, ECF No. 146; *see id.* (quoting the text of Section 147, which establishes liability for "*defraud[ing] creditors of the company*") (emphasis added). "[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118. In essence, Deutsche Bank argues that the Joint Liquidators lack

constitutional standing under these same principles, because they "ask Deutsche Bank to pay damages to Madison for alleged injury to some of Madison's creditors." Def.'s Mem. at 9.

The Court is unable to identify any case law, binding or otherwise—and the parties do not cite any—addressing whether, for the purposes of assessing standing, a claim under Section 147 should be understood as brought "on behalf" of the debtor's creditors. But Judge Lynch's decision in *American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.*, 351 F. Supp. 2d 79 (S.D.N.Y. 2004) ("*ATI*"), is instructive. There, the debtor-in-possession, American Tissue, Inc. ("ATI") brought claims, including a malpractice claim, against its former investment bank and financial adviser. *Id.* at 83. Judge Lynch explained that ATI lacked standing to bring its malpractice claim to the extent that it sought damages consisting of "liabilities ATI incurred to creditors." *Id.* at 90. But he "decline[d] to hold . . . that ATI lacks Article III standing to assert any of the malpractice claims," explaining that "ATI can assert these claims insofar as the injuries it alleges . . . injured ATI, as distinct from its creditors or investors." *Id.* at 91. The basic principle is that a bankruptcy trustee lacks standing to bring claims on behalf of the company's creditors but does have standing to bring claims on behalf of the bankrupt company itself.

Here, as noted, Section 147 permits a liquidator to bring a claim against a person or entity that knowingly participated in the carrying on of the debtor's business with the purpose of defrauding the debtor's creditors and authorizes, as a remedy, an order to make "contributions . . . to the *company's* assets" generally. Cayman Is. Companies Act (2021 Revision) § 147 (emphasis added). Thus, while a Section 147 claim arises from a fraud perpetrated on a company's creditors, *see id.*, it does not seek to recover any amounts owed to *particular* creditors, but rather the total amount of loss caused to the company's assets *generally*. As the Joint Liquidators explain, their Section 147 claim is for "the misuse of [Madison's] custody account at Deutsche Bank." Pls.' Mem. at 6. They repeatedly emphasize that Section 147 "creates a remedy for a *corporate* injury—

5

an injury exists when any business of the company was carried out fraudulently pre-liquidation. And the statute's measure of damages is a contribution to the *company's* estate rather than compensation for harm suffered by particular creditors." Pls.' Mem. Opp'n to Def.'s Partial Summ. J. ("Pls.' Opp'n") at 2, ECF No. 176 (emphases in original).  To be sure, a successful recovery here will ultimately inure to the benefit of Madison's creditors—but to all of them collectively, as is generally the case for claims brought by a trustee in an insolvency proceeding. *See Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 334 (S.D.N.Y. 2015) ("[G]eneral claims," which "affect the creditors as a class" and "are not unique to individual creditors . . . must be brought by the trustee, for the benefit of all creditors."), *aff'd*, 821 F.3d 349 (2d Cir. 2016).  Ultimately, the Joint Liquidators' Section 147 claim is not brought to compensate particular creditors who were victims of the fraud—something for which they would lack standing—but rather to cure a loss to Madison's assets overall.  *See In re 1031 Tax Grp., LLC*, 420 B.R. 178, 194-96 (Bankr. S.D.N.Y. 2009) (noting that a bankruptcy trustee may not "recover damages for injuries particular to creditors" but holding that the trustee did have "Article III standing for damages suffered by the [debtor]," even if the lost funds originated with the debtor's creditors).[2]

---

[2] The Court notes that the contrary conclusion urged by Deutsche Bank—i.e., that liquidators lack constitutional standing to bring a Section 147 claim because such a claim is necessarily "on behalf" of the debtor's creditors—would appear to compel the conclusion that a Section 147 claim (which can only be brought by a liquidator) can *never* be brought in federal court.  Such a result would arguably be in tension with the principles of comity that animated the Court's previous decision holding that it must apply Cayman Islands law to the claim in this case. *See Trott v. Deutsche Bank AG*, No. 20 Civ. 10299, 2022 WL 951109, at *5-6 (S.D.N.Y. Mar. 30, 2022) (Vyskocil, J.).  That being said, the constitutional requirements of standing cannot be altered by statute—let alone by a foreign statute, and this Court does not hold otherwise.  *See Gross v. AT & T Inc.*, No. 19 Civ. 2892, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) (explaining that foreign law "cannot alter the legal standard by which Article III standing is determined").  In any event, as explained *supra*, the mere fact that the relief sought by the Joint Liquidators' Section 147 claim would ultimately inure to the benefit of Madison's creditors does not compel the conclusion

Accordingly, the Court rejects Deutsche Bank's argument that the Joint Liquidators lack standing for their Section 147 claim because it determines that the claim is not "on behalf of" Madison's creditors.

## B.  Causal Connection

To establish a causal connection, the injury must be "fairly traceable to the challenged conduct." *Hollingsworth*, 570 U.S. at 704 (citing *Lujan*, 504 U.S. at 560-61).  The requisite causal nexus between the defendant's conduct and the injury "is most easily shown if there is a direct relationship between the plaintiff and the defendant with respect to the conduct at issue." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013).  But such a direct relationship is not a requirement, and "the fairly traceable standard is lower than that of proximate cause." *Id*.  Moreover, for an injury to be traceable to a defendant's conduct, that conduct need not be the very last step in the chain of causation.  *See Bennett*, 520 U.S. at 168-69 (explaining that it is "wrong[] [to] equate[] injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation").

Here, Deutsche Bank argues that "Madison was the direct cause of the fraud and the injury to creditors and investors," and Deutsche Bank was not, so the Joint Liquidators cannot establish the requisite causal connection for standing purposes. Def.'s Mem. Opp'n to Pls.' Partial Summ. J. ("Def.'s Opp'n") at 7-8, ECF No. 185.  In so arguing, Deutsche Bank analogizes this case to *In re Estrategias en Valores, S.A.*, 628 B.R. 722 (Bankr. S.D. Fla. 2021) (hereinafter "*Estrategias*"). The plaintiff in that case was the Columbian court-appointed liquidator of Estraval, a company allegedly operated as a Ponzi scheme. *Id.* at 726-27.  The plaintiff sued Deutsche Bank for aiding and abetting, fraudulent conveyance, unjust enrichment, and disgorgement under the theory that

---

that their claim is properly understood as brought "on behalf" of those creditors for purposes of assessing constitutional standing.

7

"but for" Deutsche Bank's investment in Estraval, "Estraval's fraudulent scheme would have collapsed due to lack of funding much sooner." *Id.* at 727-28. The plaintiff argued that, under these facts, Deutsche Bank was the "direct and proximate cause of Estraval's breach of fiduciary duties to its creditors." *Id.* at 728. The *Estrategias* court, however, rejected that argument and ultimately concluded that the injuries to Estraval's creditors could not be traced "directly or even indirectly to the actions" of Deutsche Bank, whose financial contribution to Estraval "was, at most, coincidental to the fraud . . . ." *Id.* at 732-33. The *Estrategias* court, therefore, held that the plaintiff lacked constitutional standing. *Id.* Deutsche Bank urges the court to adopt the same result here because Madison, not Deutsche Bank, "was the direct cause of the fraud and the injury to creditors and investors." Def.'s Opp'n at 8.

But this case is distinguishable from *Estrategias*. Here, it is undisputed that Deutsche Bank provided banking services to Madison, which were in turn directly used in furtherance of a Ponzi scheme. Pls.' Rule 56.1 Statement ¶¶ 5, 6, 9; Def.'s Rule 56.1 Statement ¶¶ 10, 24, 25, ECF No. 147. There is also evidence in the record regarding the specific ways in which Deutsche Bank is alleged to have facilitated the fraudulent scheme underlying the Joint Liquidators Section 147 claim.[3] Deutsche Bank's conduct here was therefore not merely "coincidental" to the fraud, as was the case with its $25 million investment with Estraval in *Estrategias*. 628 B.R. at 732. And even if Deutsche Bank's role in the underlying fraud could be properly characterized as only indirect, an indirect causal connection may suffice for purposes of Article III standing. *See Rothstein*, 708 F.3d at 91 ("[W]hile the indirectness of an injury may make it substantially more difficult to show the fairly traceable element of Article III standing, *i.e.*, to establish that, in fact,

---

[3] *See* Pls.' Rule 56.1 Statement ¶¶ 11 (temporarily under seal), 13 (temporarily under seal), 17; *see also* Gross Decl., Ex. 13 at 303:8-307:16, ECF No. 148-13 (temporarily under seal); Ex. 17, ECF No. 148-17 (temporarily under seal); Ex. 22 at 25:19-40:3, ECF No. 148-22; Ex. 23, ECF No. 148-23.

8

the asserted injury was the consequence of the defendants' actions, indirectness is not necessarily fatal to standing."). Ultimately, the Court is persuaded that the Joint Liquidators have met the relatively low threshold for establishing a causal connection between Deutsche Bank's conduct and Madison's fraud for Article III standing purposes.

In sum, the Joint Liquidators have established (1) an injury-in-fact, and (2) that said injury is fairly traceable to Deutsche Bank's conduct. Given there is no dispute as to the third element of standing (i.e., that said injury is redressable via their requested remedy), the Court concludes the Joint Liquidators have constitutional standing to bring their Section 147 claim.

## II.     Prudential Standing

"In addition to the immutable requirements of Article III, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing" and are meant to "[]impose[] limits on the exercise of federal jurisdiction." *Bennett*, 520 U.S. at 162 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) and *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The Court now turns to whether the Joint Liquidators have prudential standing.

### A.     The *Wagoner* Rule

In *Wagoner*, the Second Circuit held that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to creditors." 944 F.2d at 118. "The rationale underlying the *Wagoner* rule derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000). The Second Circuit reasoned that "[b]ecause management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation," a trustee is barred "from suing to recover for a wrong that he himself essentially took part in." *Id.* at 87.

9

Instead, any claims against third parties for "defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Wagoner*, 944 F.2d at 120. Thus, *Wagoner* stands for the proposition that a bankruptcy trustee cannot assert claims on behalf of the bankrupt corporation against a third party for fraud when the corporation itself participated in the fraud. *See id.* at 118.

Here, relying on *Wagoner*, Deutsche Bank argues that, because "Madison itself participated in [the] fraud," the Joint Liquidators lack prudential standing to bring their Section 147 claim. Def.'s Mem. at 12. For their part, the Joint Liquidators argue that "*Wagoner* and its progeny do not apply" because those cases "apply *New York law* about when certain claims must be brought by creditors rather than someone, such as a U.S. bankruptcy trustee, who stands in the debtor's shoes." Pls.' Mem. at 2 (emphasis added). The Joint Liquidators add that "Cayman law applies here, not New York law," and note that under Cayman law, "[o]nly liquidators can bring a Section 147 claim," such that in bringing this claim, the Liquidators stand in their own shoes, not in Madison's, rendering *Wagoner* "inapt." *Id.* The applicability of *Wagoner* is dispositive—that is, if *Wagoner* applies, summary judgment is appropriate for Deutsche Bank, as there is no dispute that Madison's principals orchestrated the fraudulent scheme underlying the Joint Liquidators' claim. *See* Pls.' Rule 56.1 Statement ¶ 9.

As with the constitutional standing question discussed above, there is no directly on-point case law on the prudential standing question presented here—i.e., whether *Wagoner* applies to a Section 147 claim. The closest guidance is from *Pearson v. Deutsche Bank AG*, No. 21 Civ. 22437, 2023 WL 2610271 (S.D. Fla. Mar. 23, 2023), which stems from the same Ponzi scheme as does this case.[4] In *Pearson*, Cayman liquidators of thirteen companies asserted eight claims against

---

[4] This Court previously cited a decision in the *Pearson* litigation in its decision denying Deutsche Bank's motion to strike the Joint Liquidators request for a jury trial. *See Trott v.*

10

Deutsche Bank, including a Section 147 claim. *Id.* at *5. Applying the Eleventh Circuit's analogue to the *Wagoner* rule,[5] *Pearson* granted summary judgment on the basis of standing as to five of the companies because there was "no evidence that those entities had identities that were separate and apart from" the four individual perpetrators of the fraud. *Id.* at 22. At the same time, *Pearson* denied summary judgment on the basis of standing as to the remaining companies because "[a] fact finder could reasonably conclude from th[e] evidence that not all the Companies' business activities were illegitimate," meaning that there was a "genuine dispute" about whether the wrongdoing of the four individual perpetrators of the fraud could be imputed to those companies. *Id.* Thus, the closest on point case applied the principles underlying the *Wagoner* rule to bar a Section 147 claim where, as here, the debtors actively participated in the underlying fraud.

That being said, the *Pearson* court's analysis on this point was somewhat conclusory, as it did not conduct a thorough prudential standing analysis of the Section 147 claim. The Court therefore acknowledges *Pearson* as persuasive authority but also undertakes its own independent analysis of the issues raised by the parties.

### B. Whether the *Wagoner* Rule Is a Creature of New York State Law

A critical question here is whether the *Wagoner* rule is a creature of New York state law, as the Joint Liquidators contend—in which case it would apply only to claims brought under New York law (and also perhaps to those brought under the laws of jurisdictions that incorporate the same applicable principles)—or if, as Deutsche Bank argues, *Wagoner* is a federal rule in the

---

*Deutsche Bank, AG*, No. 20 Civ. 10299, 2024 WL 1313040, at *3, 7 (S.D.N.Y. Mar. 26, 2024) (citing *Pearson v. Deutsche Bank AG*, No. 21 Civ. 22437, 2023 WL 2872443 (S.D. Fla. Apr. 9, 2023) (denying Deutsche Bank's motion to strike jury demand for Section 147 claim)).

[5] *See Isaiah v. JP Morgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020) (holding that a corporation—and the receiver standing in the corporation's shoes—lacked standing because the corporation's "primary existence was as a perpetrator of the Ponzi scheme [and] cannot be said to have suffered injury from the scheme it perpetrated").

11

Second Circuit that is independent of New York law, and "applies as a limit on all federal courts in the Second Circuit, regardless of which jurisdiction's laws govern the claims at issue." Def.'s Opp'n at 9.

To be sure, there is a resemblance between the *Wagoner* rule and the principle of *in pari delicto*, which, under New York law, prohibits one wrongdoer from recovering against another. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013). But the New York Court of Appeals has expressly stated that "the *Wagoner* rule is not part of New York law"—rather, it "is a prudential limitation on standing under federal law." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 946 n.3 (N.Y. 2010). As the Court of Appeals is the final authority on New York law, *see Golden v. Winjohn Taxi Corp.*, 311 F.3d 513, 515 (2d Cir. 2002) ("[W]e defer to the New York Court of Appeals on [a] determinative question of New York law."), it follows that it is also the final authority on what is *not* an aspect of New York law. Although quite brief, its statement in *Kirschner* would seem to foreclose any notion that the *Wagoner* rule is merely an outgrowth of New York law. Indeed, *in pari delicto* is different—it is an *affirmative defense* under New York law on which the defendant carries the burden. While the *Wagoner* rule is related to *in pari delicto*, *Wagoner* is a distinct doctrine that "derives in significant part from federal bankruptcy law, and is a prudential limitation on standing under federal law." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 395 (S.D.N.Y. 2011) (quoting *Kirschner*, 938 N.E.2d at 946 n.3); *accord Picard v. HSBC Bank PLC*, 454 B.R. 25, 29-30 (S.D.N.Y. 2011) ("Although, under New York State law, *in pari delicto* is an affirmative defense, in federal court prudential considerations deprive a bankruptcy trustee of standing to even bring a claim that would be barred by *in pari delicto*."). There is, therefore, no reason to limit the application of the *Wagoner* rule to claims brought under New York law (or to claims brought under the laws of jurisdictions that incorporate analogous legal principles).

12

## C. The Joint Liquidators' Counter-Arguments

The Joint Liquidators' counter-arguments are unavailing. First, the Joint Liquidators point to *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003) (hereinafter "*Color Tile*"), where the Second Circuit affirmed a district court decision ruling that *Wagoner* was inapplicable to breach of fiduciary duty and breach of contract claims brought under Texas law, under which a trustee has standing to pursue such claims even where "the debtor's representatives participated in the acts or omissions giving rise to the causes of actions." *Id.* at 157 (quoting *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1286 (5th Cir. 1994) ("*Educators*").[6] But *Color Tile* is somewhat idiosyncratic, and the applicability of its reasoning here is difficult to determine at best. There, the court framed the parties' dispute over standing as whether, under Texas law, the claim at issue belonged to the debtor or to its creditors. *See id.* at 156-57. The parties did not contest that Texas law controlled that question. *See id.* at 157. Looking to Texas law, the district court concluded that the claims at issue belonged not to the creditors but to the debtor—and that the debtor's assignee therefore had standing to bring the claim. *See id.* The district court relied in part on the Fifth Circuit's decision in *Educators*, which opined that the possibility of a valid *in pari delicto* defense does not "preclude[] the debtor from *bringing* the claim" in the first instance. *Id.* (quoting *Educators*, 25 F.3d at 1286). *Educators* further stated that *Wagoner* was inapt to the case at bar because the court "could not 'conclude from the allegations in the complaint whether representatives of [the bankrupt trust] actually

---

[6] The parties also cite competing decisions either applying the *Wagoner* Rule to claims brought under other laws of other states, *see* Def.'s Opp'n at 10 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995), or not doing so, *see* Pls.' Opp'n at 5 (citing *Bondi v. Bank of Am. Corp.* (*In re Parmalat Sec. Litig.*), 383 F. Supp. 2d 587, 595 (S.D.N.Y. 2005). Because *Color Tile* is the only Second Circuit decision cited by the Joint Liquidators suggesting that the *Wagoner* Rule might not apply to out-of-state claims, the Court focuses its analysis on that case.

13

participated in the acts or omissions giving rise to the causes of action.'" *Id.* (alteration in original) (quoting *Educators*, 25 F.3d at 1286 n.7).

*Color Tile* is of limited guidance here for several reasons. First, the key question in *Color Tile* was whether the claim at issue "belong[ed] to [the debtor] or to its creditors." *Color Tile*, 322 F.3d at 156. It makes sense to look to state law to answer that question, because "[i]n a bankruptcy proceeding, state law . . . determines whether a right to sue belongs to the debtor or to the individual creditors." *Wight*, 219 F.3d at 86. Nothing in the opinion suggests, as the Joint Liquidators assert here, that a claim can be understood as belonging to neither entity but rather to the debtor's *liquidator* for purposes of assessing standing. Second, the parties in *Color Tile* agreed that Texas law controlled the question of whether the claims at issue belonged to the debtor or the creditor. *See* 322 F.3d at 157. But that does not mean that, as the Joint Liquidators assert, *Color Tile* held that a court *must* look to the underlying jurisdiction's laws to determine whether *Wagoner* is applicable. Third, the district court in *Color Tile* relied on the Fifth Circuit's decision in *Educators*, in which there was a factual dispute as to whether the debtor was actually complicit in the conduct giving rise to the claim. *See id.* at 157. Under such a record, it makes sense that the *Wagoner* rule would not preclude a claim. But that is not the case here, where it is undisputed that Madison's principals orchestrated the fraud underlying the Joint Liquidators' claim. In sum, the Court cannot conclude that *Color Tile*'s logic compels the conclusion that the *Wagoner* rule is inapplicable here.

But even if the Court were to look at principles of Cayman law to determine the applicability of the *Wagoner* rule, as the Joint Liquidators urge, that would not change the outcome here. The Joint Liquidators note that, under Section 147, a claim can only be brought once the liquidation process has begun and can be brought only by a liquidator. *See* Cayman Is. Companies Act (2021 Revision) § 147 (stating that, "in the course of the winding up of a company," "the liquidator may apply to the Court for [relief]"). The Joint Liquidators reason that, because Cayman

14

law confers a Section 147 on a liquidator alone (and not on the company), the basic principle underlying *Wagoner*—that claims cannot be brought on behalf a debtor who participated in the fraud underlying the claim—is inapplicable here. Pls.' Opp'n at 6. In essence, the Joint Liquidators assert that, under Section 147, a liquidator has its own legally protectable interest, separate and apart from the company itself, in holding third parties accountable for the carrying on of the company's business to defraud its creditors. *See id.* According to the Joint Liquidators, they do not stand "in the shoes" of Madison in bringing their Section 147 claim—they stand in their own shoes, rendering *Wagoner* inapt. *Id.*

To be sure, the Joint Liquidators are correct that a claim under Section 147 can only be brought once the winding up process has begun and may only be brought by a liquidator. But it does not then follow that a liquidator stands in its "own shoes." In rejecting Deutsche Bank's constitutional standing arguments, the Court credited the Joint Liquidators' argument that their Section 147 claim does not seek to remedy injuries to particular creditors of Madison (for which the Liquidators would lack constitutional standing), but rather injuries to *Madison itself* (for which a trustee does have constitutional standing). *See* Pls.' Opp'n at 2. Indeed, the first paragraph of the SAC states that the Joint Liquidators bring their claim "on behalf of Madison." SAC ¶ 1. And they have always claimed that the injury here is not to themselves but to Madison. *See id.* (stating that they "bring this case against Deutsche for its role in aiding a fraudulent trading scheme . . . *that caused Madison to suffer* more than $200 million in damages") (emphasis added); *id.* ¶ 151 ("*Madison suffered losses* of at least $60 million from fraudulent trading activity and transfers that misappropriated funds . . . .") (emphasis added). The remedy the Joint Liquidators have sought has always been a contribution to Madison's assets. *See id.* ¶ 155 ("Deutsche should be required to make a *contribution to Madison* in an amount equal to the loss that it suffered through the carrying on of its business in a fraudulent manner, at least $200 million.") (emphasis added). And,

15

in convincing this Court that they are entitled to a jury trial under the Seventh Amendment, the Joint Liquidators analogized their Section 147 claim to the tort of conversion, which involves the interference with a party's right of possess certain property—as alleged here, "a fraudulent scheme to misappropriate certain funds held *by Madison*." *Trott*, 2024 WL 1313040, at *6 (emphasis added). In sum, the injury alleged by the Joint Liquidators has always been to Madison—not to its creditors because, as discussed *supra*, that would raise constitutional standing issues. And the remedy has always been to restore the assets of Madison that Deutsche Bank allegedly participated in misappropriating.

All of this compels the conclusion that, for purposes of assessing prudential standing, the Joint Liquidators' Section 147 claim is brought on behalf of Madison. Indeed, the Joint Liquidators themselves have no interests here other than those that relate to Madison (as the debtor that they have been assigned to liquidate), and indirectly to Madison's creditors (i.e., to increase the pool of assets for distribution to them). Accordingly, the Court concludes that the Joint Liquidators, through their Section 147 claim, stand in Madison's shoes and that the *Wagoner* rule is therefore applicable.

The Joint Liquidators last argument is that applying *Wagoner* here would have "dangerous policy ramifications" and would be "the antithesis of comity," because it would limit foreign representatives' insolvency claims to only those claims that could be brought under domestic law. at 6-7. As an initial matter, the *Wagoner* rule is a rule of prudential standing that limits federal jurisdiction in the Second Circuit. While prudential limits on standing, unlike constitutional ones, "can be modified or abrogated by *Congress*," *Bennett*, 520 U.S. at 162 (emphasis added), the Court is unaware of any authority for the proposition that they may be modified otherwise—e.g., by state statute or, as relevant here, by foreign law. In any event, nothing in this decision interferes with a Cayman liquidator in a future case from bringing a Section 147 claim in federal court where

16

otherwise appropriate—but any such claim must be subject to limitations on standing in federal court, which in the Second Circuit includes the *Wagoner* rule's prohibition on claims brought on behalf of a debtor company against a third party for fraud when that company was a participant in the underlying fraud.  Here, because the parties do not dispute that, if *Wagoner* applies, it bars the Joint Liquidators' claim, the Court concludes that summary judgment is appropriate for Deutsche Bank.[7]

## CONCLUSION

For the reasons stated above, Deutsche Bank's Motion for Summary Judgment, ECF No. 145, is **GRANTED**.  The Joint Liquidators' Partial Motion for Summary Judgment, ECF No. 142, is **DENIED**.  In light of the Court's decision, Deutsche Bank's Motion to Exclude the Testimony of Proffered Experts, ECF No. 156, and the Joint Liquidators' Motion to File a Sur-reply, ECF No. 194,[8] are **DENIED AS MOOT.**

The Clerk of Court is respectfully requested to terminate ECF Nos. 142, 145, 156, and 194.

SO ORDERED.

Dated: September 30, 2025

New York, New York

_____
DALE E. HO
United States District Judge

---

[7] Because the Court resolves this case on standing grounds, it does not address the remaining merits arguments raised by the parties in their respective briefs.

[8] The Joint Liquidators sought to file a sur-reply, arguing Deutsche Bank raised "two new arguments on reply."  ECF No. 194.  The Joint Liquidators' request is moot because the Court does not rely on Deutsche Bank's Reply in reaching its decision on the parties' cross-motions.