UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN NICHOLAS JOHN TROTT et al.,
Plaintiffs,

v.

DEUTSCHE BANK, AG,
Defendant.

20 Civ. 10299 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiffs Martin Nicholas John Trott and Christopher James Smith (the "Joint Liquidators"), in their capacity as the Foreign Representatives and Joint Official Liquidators of Madison Asset LLC ("Madison"), brought claims under Section 147 of the Cayman Islands Companies Act (2021 Revision) against Defendant Deutsche Bank AG ("Deutsche Bank"). This Court granted summary judgment for Deutsche Bank, *see* Op. and Order (the "Summary Judgment Opinion"), ECF No. 206, on prudential standing grounds, citing the Second Circuit's decision in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). The Joint Liquidators now move for reconsideration of that decision. *See* Mot. for Recons. (the "Reconsideration Motion"), ECF No. 207. For the reasons discussed below, the Joint Liquidators' Motion for Reconsideration is **GRANTED**.

## LEGAL STANDARD[1]

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. Of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "[T]he . . . standard for a

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

district court to grant such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and might reasonably be expected to alter the conclusion reached by the court." *Smith v. CVS Albany, LLC*, No. 20 Civ. 4000, 2022 WL 3022526, at *1 (2d Cir. Aug. 1, 2022). Courts also grant reconsideration to "correct a clear error or prevent manifest injustice." *Schoolcraft v. City of N.Y.*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014). That said, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *accord Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021).

**DISCUSSION**

The Court assumes familiarity with the facts of this case, which are set forth in previous opinions denying Deutsche Bank's motion to dismiss, *see Trott v. Deutsche Bank AG*, No. 20 Civ. 10299, 2022 WL 951109, at *1-4 (S.D.N.Y. Mar. 30, 2022) (Vyskocil, J.), and granting Deutsche Bank's motion for summary judgment, *see generally* Summary Judgment Opinion. In the latter Opinion, this Court concluded that the Joint Liquidators had constitutional standing, but granted summary judgment to Deutsche Bank under the *Wagoner* rule—*i.e.*, "that a bankruptcy trustee cannot assert claims on behalf of the bankrupt corporation against a third party for fraud when the corporation itself participated in the fraud," Summary Judgment Opinion at 10 (citing *Wagoner*, 944 F.2d at 118). Applying *Wagoner*, this Court concluded that, because there is no dispute that Madison's principals orchestrated the very fraud underlying the Joint Liquidators' claim, the liquidators lack prudential standing as to pursue that claim on Madison's behalf. *See* Summary Judgment Opinion at 9-10.

**A. The Joint Liquidators' Motion**

The essence of the Joint Liquidators' argument on this Motion is that the Summary Judgment Opinion was erroneous insofar as it held that the *Wagoner* rule applied to bar prudential standing in this case regardless of principles of Cayman Islands law, under which their claim is brought. According to the Joint Liquidators, the *Wagoner* rule does not apply independently of the substantive law of the jurisdiction under which a claim is brought—it simply converts a jurisdiction's recognition of an affirmative defense of *in pari delicto* to a rule of prudential standing in the Second Circuit. The Joint Liquidators further maintain that Cayman Islands law does not recognize the defense of *in pari delicto* and therefore the *Wagoner* rule does not apply here to prohibit their claim against Deutsche Bank.

Reconsideration is an extraordinary request, but "the Court's interest is in reaching the correct result and, to that end, takes no issue with revisiting [its prior] ruling." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025), *appeal dismissed sub nom. Diaz Martinez v. Hyde*, No. 25-1902, 2025 WL 4670604 (1st Cir. Dec. 23, 2025). The Court has carefully reviewed the authorities cited by the parties, and, for the reasons that follow, ultimately concludes that reconsideration is appropriate. In considering Deutsche Bank's argument that the *Wagoner* rule precludes the Joint Liquidators' claim, the Court treated the issue of whether the rule is a creature of New York State law as essentially dispositive. Indeed, that is largely how the parties appeared to frame it. *See* Pls.' Opp'n to Defs.' Mot. for Summ. J. at 4, ECF No. 176 ("Defendant's *Wagoner* argument incorrectly presumes that the claim here arises under New York law."); Defs.' Opp'n to Pls.' Mot. for Summ. J. at 9, ECF No. 185 ("[T]he *Wagoner* doctrine . . . applies as a limit on all federal courts in the Second Circuit, regardless of which jurisdiction's laws govern the claims at issue."). Because the New York Court of Appeals has stated that "the *Wagoner* rule is not part of New York law," *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 946 n.3 (N.Y. 2010), this Court

concluded that the Joint Liquidators were incorrect, and that *Wagoner* applied to bar their Cayman Islands claim, regardless of the contours of Cayman Islands law.

But upon careful re-review of the relevant authorities, the Court concludes that the latter proposition does not follow from the former: that is, simply because *Wagoner* is not a rule of New York law, it does not follow that, as Deutsche Bank argued, the rule applies to any and all claims brought in federal courts in the Second Circuit. Rather, the relevant decisions from the Second Circuit, along with helpful decisions applying the rule from lower courts within the Circuit, make clear that *Wagoner* applies only where a claim arises under the laws of a jurisdiction that recognizes a strict affirmative defense of *in pari delicto* that absolutely bars recovery by a party (or a trustee of a party in insolvency proceedings) that has been complicit in the alleged wrongdoing. Where claims are brought under the laws of such jurisdictions, the *Wagoner* rules converts the legal principles underlying the *in pari delicto* defense to a bar on prudential standing. Thus, "whether *Wagoner* bars recovery depends on whether governing substantive law presents a flat bar that justifies dismissal." *In re Endo Int'l Plc*, 674 B.R. 349, 391 (Bankr. S.D.N.Y. 2025).

The Second Circuit's discussion of *Wagoner* in *Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000), guides the Court's decision here. There, the Circuit explained that in *Wagoner*, "we ruled that *under governing New York law*, '[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation.'" *Id.* at 86 (emphasis added) (quoting *Wagoner*, 944 F.2d at 120). Where the managers of a corporation have been complicit in the underlying fraud, "the misconduct of managers within the scope of their employment will normally be imputed to the corporation," thus depriving the corporation (or a bankruptcy trustee who has standing on the corporation's behalf) of prudential standing for the claim. *Id.* *Wight* then considered an exception to the rule that the misconduct of a manager will be imputed to the corporation: the adverse interest exception, under

which "management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation." *Id.* at 87. In order to determine whether the exception applied in that case, the Circuit then considered the scope of the adverse interest exception "[u]nder New York law." *Id.*

While explaining or applying the *Wagoner* rule, courts—including the Second Circuit in *Wight*—often make reference to New York law. *See id.* at 86 (describing the Circuit's decision in *Wagoner* as "rul[ing] under governing New York law"); *In re Parmalat Sec. Litig.*, 477 F. Supp. 2d 602, 609 (S.D.N.Y. 2007) (describing the Second Circuit's decision in *Wagoner* as "applying New York law"). This is presumably what led the Joint Liquidators in this case to, at times, appear to characterize the rule as merely a creature of New York law. But that is not quite correct, as the New York Court of Appeals has expressly disclaimed *Wagoner* as a "part" of New York law, *Kirschner*, 938 N.E.2d at 946 n.3; and the Second Circuit has applied *Wagoner* to bar claims brought under the law of other jurisdictions, like Connecticut, *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995). *Wagoner* therefore cannot be understood only as an application of New York law.

But while *Wagoner* is not a "part" of New York law and is not limited only to claims brought under New York law, "it is clear that on some level, application of the *Wagoner* rule requires an analysis of state law." *In re Endo Int'l Plc*, 674 B.R. at 393-94. In *Wight*, the Second Circuit explained that *Wagoner* is related to the principle, found in New York law, that "the misconduct of managers within the scope of their employment will normally be imputed to the corporation." 219 F.3d at 86; *see also In re Parmalat Sec. Litig.*, 477 F. Supp. 2d at 609 (applying *Wagoner* in light of strict rule of agent to principal imputation "[u]nder New York law"). And in applying *Wagoner* in *Wight*, the Circuit considered whether an exception to this general principle might be applicable by again looking to New York law, *see* 219 F.3d at 87 (considering whether,

under New York law, the "adverse interest exception" to the general presumption that an agent's acts are imputed to the principal, applied to the facts of that case). Notably, the decision in which the New York Court of Appeals declared that *Wagoner* is not a "part" of New York law, *Kirschner*, was rendered in response to a certified question from the Supreme Court of Delaware in a case concerning the applicability of the *Wagoner* rule. In deciding whether *Wagoner* applied to preclude standing in that case, the Supreme Court of Delaware determined it was necessary to understand whether "the doctrine of *in pari delicto* would bar" a particular claim brought under New York law. *See Teachers' Ret. Sys. of La. v. PriceWaterhouseCoopers, LLP*, 998 A.2d 280, 282 (Del. 2010), *certified question accepted*, 925 N.E.2d 930 (N.Y. 2010), *and certified question answered sub nom. Kirschner v. KPMG LLP*, 938 N.E.2d 941 (N.Y. 2010). So while the New York Court of Appeals has made clear that the *Wagoner* rule of prudential standing is not a "part" of New York state law, the rule's application in that particular case could only be decided by reference to New York substantive law regarding agency and imputation.

What seems to follow is that, while *Wagoner* is not limited only to claims under New York law, it also does not apply to any and all claims brought in the Second Circuit regardless of the substantive law of the jurisdiction under which the claims are brought. Rather, it applies whenever the laws of the jurisdiction under which the claim is brought incorporate strict principles about agency and imputation that serve to flatly bar a trustee from recovering for wrongdoing in which the debtor itself participated—as is the case in New York. *See In re Endo Int'l Plc*, 674 B.R. at 398 ("New York applies the *in pari delicto* defense strictly."). As the Joint Liquidators point out in their brief in support of reconsideration, it makes sense that a court must look to the underlying jurisdiction's legal principles on the question of whether an agent's bad acts must be strictly imputed to the principal because there is no federal common law on imputation. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83 (1994) (holding that it is "plainly wrong" to argue that federal

common law could "determine[] whether the knowledge of corporate officers acting against the corporation's interest will be imputed to the corporation."). Thus, while New York law (and that of some other jurisdictions) provides for a strict form of the *in pari delicto* defense, under which a trustee is flatly prohibited from recovering for a fraud in which the debtor itself was complicit, the *Wagoner* rule converts this strict principle of imputation into a rule of prudential standing. *See Picard v. HSBC Bank PLC*, 454 B.R. 25, 29-30 (S.D.N.Y. 2011) ("Although, under New York State law, *in pari delicto* is an affirmative defense, in federal court prudential considerations deprive a bankruptcy trustee of standing to even bring a claim that would be barred by in pari delicto.").

*In re Endo*, a bankruptcy court decision issued one day before this Court's Summary Judgment Opinion, illustrates how this plays out in practice. There, the bankruptcy court rejected the argument that *Wagoner* applies to bar claims regardless of the laws of the jurisdiction under which the claim is brought. *See* 674 B.R. at 393-94. It then held that the trustee lacked prudential standing to bring claims under New York law, but also held that this was not the case for claims brought under Pennsylvania or Irish law. That is because, under Pennsylvania law, a corporation is not flatly prohibited from bringing a claim even where "the controlling officers and directors of the bankrupt corporations [are] the wrongdoers." *Id.* at 394 (citing *In re Adelphia Commcn's Corp.*, 365 B.R. 24, 32, 45-46 & n.68 (Bankr. S.D.N.Y. 2007)). The bankruptcy court further held that Irish courts would be likely to "borrow from English common law, which provides a relatively flexible, equity-driven approach somewhat akin to Pennsylvania's." *Id.* This led the Court to conclude that,

> to the extent New York law applies, the Wagoner doctrine applies and bars the Trustee's claims . . . because . . . New York's strict *in par[i] delicto* doctrine would require the granting of a motion to dismiss. By contrast, the laws of Pennsylvania and Ireland both have a more flexible *in pari delicto* (or equivalent) doctrine that does not support granting

> a motion to dismiss for failure to state a claim, and both jurisdictions appear not to preclude lawsuits by culpable corporations for harms to that corporation itself by others.

*Id.* at 394-95. The court then explained that it is

> possible that [the defendant] will ultimately successfully advance the [*in pari delicto*] defense [on the non-New York claims]. But it is too soon to tell what the outcome will be, and premature to dismiss the action as conclusively barred by the *in pari delicto* doctrine. . . . By extension, because Pennsylvania law would not require dismissal on *in pari delicto* grounds of the claims asserting aiding and abetting breaches of fiduciary duty, the *Wagoner* doctrine does not strip the Trustee of standing to bring the aiding-and-abetting breach of fiduciary duty claims to the extent those claims arise under Pennsylvania law . . . .

*Id.* at 403. The Court went on to hold similarly with respect to the claims brought under Irish law. *See id.* at 404*; cf. In re Parmalat*, 383 F. Supp. 2d at 596 (declining to apply *Wagoner* to claim brought under North Carolina law).

While there is no pellucid controlling authority explaining the application of *Wagoner* to non-New York claims, the Court understands *Wight* and the other cases cited above to stand for the proposition that, where a trustee brings claims (1) to recover for wrongs in which the debtor itself was complicit, (2) under the laws of a jurisdiction that takes a strict approach to the *in pari delicto* defense, then *Wagoner* converts the imputation principles underlying such a defense to a bar on prudential standing. That is the best way to harmonize, on the one hand, the Second Circuit's decision in *Wight* applying *Wagoner* by reference to the scope of the *in pari delicto* defense and exceptions to it under New York law, with, on the other hand, the New York Court of Appeals's declaration in *Kirschner* that *Wagoner* is not a "part" of New York law and the Second Circuit's decision in *Hirsch* applying the *Wagoner* rule to a non-New York claim. And the corollary to the analysis above is that, in order to determine whether *Wagoner* serves to bar prudential standing for a trustee on a particular claim, a court must consider the substantive law of the jurisdiction under which the claim is brought to assess whether the jurisdiction takes a strict

approach to the *in pari delicto* defense—something that this Court erroneously deemed unnecessary in its Summary Judgment Opinion.

**B. Deutsche Bank's Counter-Arguments**

Deutsche Bank raises several counter-arguments, which this Court has carefully considered, but ultimately concludes are unavailing. First, it argues that the Joint Liquidators failed to raise any arguments regarding imputation in their summary judgment briefs, and may not do so now on a motion for reconsideration. *See* Defs.' Opp'n to Mot. for Recons. ("Defs.' Opp'n") at 3-4, ECF No. 209. While it is true that the Joint Liquidators did not use the word "imputation" in their summary judgment briefing, they did raise arguments over the applicability of the *Wagoner* rule to a claim brought under Cayman Islands law, and whether, in considering such a claim, a court should "attribute[]" the wrongdoing of a debtor's officers to the company. Pls.' Mem. in Supp. of Sum. J. ("Pls.' Summ J. Mem.") at 9-10, ECF No. 143. Thus while it is fair to say that the analysis of *Wagoner* in the parties' summary judgment briefing was not as clearly developed as it is now, the basic substantive question presented on this motion for reconsideration—whether Second Circuit precedent requires that the bad acts of a debtor's agents be attributed (or imputed) to the company for purposes of determining the prudential standing of a trustee—was raised previously. It is not a new issue improperly presented on the motion for reconsideration.

Deutsche Bank further argues that the analysis above conflates *Wagoner* with the *in pari delicto* defense. *See* Defs.' Opp'n at 5. While the Court acknowledges that its understanding of the *Wagoner* rule is that its applicability to a claim depends on whether or not the jurisdiction's laws under which the claim is brought recognize a strict *in pari delicto* defense, the doctrines remain distinct. *In pari delicto* is an affirmative defense, on which a defendant bears the burden. *See In re Refco Sec. Litig.*, 779 F. Supp. 2d 372, 374 n.1 (S.D.N.Y. 2011) ("Under New York law (which substantively governs the claims here at issue), *in pari delicto* is an affirmative defense as

to which a defendant bears the burden of proof."), *aff'd sub nom. Krys v. Butt*, 486 F. App'x 153 (2d Cir. 2012). "By contrast, the gloss on New York's *in pari delicto* doctrine enunciated by the Second Circuit in *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991) is a prudential limitation on standing under federal law." *Id. See also Picard v. HSBC Bank PLC*, 454 B.R. 25, 29-30 (S.D.N.Y. 2011) ("Although, under New York State law, *in pari delicto* is an affirmative defense, in federal court prudential considerations deprive a bankruptcy trustee of standing to even bring a claim that would be barred by *in pari delicto*."). Thus, where a jurisdiction recognizes a strict version of the *in pari delicto* defense, the *Wagoner* rule essentially converts the legal principles underlying it into a rule of prudential standing. So the doctrines, while related, remain distinct.

Finally, Deutsche Bank contends that there is no dispute that Madison and its principals orchestrated the very fraud that forms the basis of the Joint Liquidators' claim. *See* Defs.' Opp'n at 5-6. In the Summary Judgment Opinion, this Court cited that fact and stated that, in light of Madison's undisputed role in perpetrating the underlying fraud, applying principles of Cayman Islands law "would not change the outcome here." Summary Judgement Opinion at 14-16. In light of the analysis above, however, that conclusion—reached without a thorough analysis of the principles of Cayman Islands law—now seems premature and perhaps overly broad. As explained above, determining whether or not *Wagoner* applies to bar prudential standing in this case requires an examination of Cayman Islands law and whether or not it recognizes a strict form of the *in pari delicto* defense (or the Cayman Islands analogue of it, if any) along the lines of what is found under New York law—an analysis that this Court has yet to perform.

Accordingly, the Court concludes that it erred in holding that *Wagoner* barred the Joint Liquidators' claim regardless of applicable underlying principles of Cayman Islands law. It did

so by failing to properly consider binding authority—namely *Wight*'s explication of *Wagoner* and *O'Melveny*'s guidance that there is no federal common law of imputation.

To be clear—in so ruling, the Court does *not* at this time decide whether the Joint Liquidators' claim is barred by any affirmative defenses such as *in pari delicto*, *ex turpi causa non oritur actio*, and/or illegality. Nor does it decide any other issues raised on the parties' cross-motions for summary judgment that were left unaddressed in the Court's previous Summary Judgment Opinion. It simply rules that it erred in concluding that *Wagoner* barred prudential standing without regard to underlying principles of Cayman Islands law, and vacates that portion of the Opinion.

## CONCLUSION

For the reasons stated herein, the Joint Liquidators' Motion for Reconsideration is **GRANTED**. The Summary Judgment Order, ECF No. 206 is **VACATED IN PART**—i.e., to the extent that it concludes that the Joint Liquidators lack prudential standing. *See* Summary Judgment Opinion at 11-17.

Within fourteen days of the date of this Order, the parties shall submit a joint letter setting forth their positions as to next steps in this litigation. The letter should address, among other things, whether the parties' cross-motions for summary judgment, ECF Nos. 142 and 145 and/or Deutsche Bank's motion to exclude expert testimony, ECF No. 156, should be resolved on the existing briefing, or whether renewed briefing is appropriate with respect to any or all of the above motions.

If the parties seek to file renewed briefing on any or all of the above motions, they shall submit a proposed briefing schedule, including proposed page limits, for such briefing. Any renewed briefing on cross-motions for summary judgment shall be limited to two briefs per side, and may address only the remaining issues left unresolved by the Summary Judgment Opinion and

this Order (i.e., they shall not address constitutional standing or re-argue any other issues on which this Court has now ruled). The status letter shall also indicate the parties' mutual availability for oral argument, if necessary, during the two calendar months following the completion of summary judgment briefing.

The parties are advised that, if new briefing is authorized, it will not be license to raise new arguments not presented on the parties' initial motion papers or to expand the record, but the parties may cite any new authority not cited in their initial briefs to support arguments previously raised. Moreover, if additional briefing is authorized, rather than re-file summary judgment exhibits, the parties should instead cite to exhibits already filed on the public docket and, where applicable, shall also cite to any sealed unredacted versions of such exhibits.

The Clerk of Court is respectfully requested to terminate ECF No. 207.

SO ORDERED.

Dated: September 29, 2026

New York, New York

DALE E. HO
United States District Judge